COMM'RS OF OTTAWA CO., *et al.*, V. CHRISTIAN NELSON, *et al.*

1. BONDED INDEBTEDNESS, *on Division of Counties, and Townships; Constitutional Law.* Sections 3 and 4 of "an act to regulate taxation on the change of boundary lines," approved March 3, 1873, are. constitutional and valid. (*Comm'rs of Sedgwick Co. v. Bunker,* 16 Kas. 498, cited, and followed.)

2. ——— That clause of section 1 of article 11 of the constitution, which provides that "the legislature shall provide for a uniform and equal rate of assessment and taxation," discussed, and construed.

*Error from Ottawa District Court.*

INJUNCTION, brought by *Nelson* and fourteen others, "citizens and taxpayers in and of Bennington township, in Ottawa county," plaintiffs, against the *Board of County Commissioners, T. E.·Scott* as county treasurer, and the *Township of Concord,* as defendants. The plaintiffs state that they are severally the owners of certain real property situate in said township of Bennington, (describing the property of each;) that the territory now constituting the township of Bennington was formerly included within and formed a part of the township of Concord; that on the —— of ——— 1872, said territory was duly detached and set off from Concord township, and organized into a separate township, and called Bennington; that on or about the 1st of October 1871, the proper authorities duly issued the bonds of said township of Concord, in the sum of $10,500, running five years from date, and bearing interest, etc.; that said bonds were issued in payment of two certain bridges built in Concord township, but "neither of said bridges are now or ever have been since its organization in 1872 within the limits of Bennington township." The plaintiffs further stated, that there was levied on said real estate of the plaintiffs certain taxes in and for the years 1873 and 1874, respectively, to pay interest on said bonds and.to provide a sinking-fund for their payment and redemption, and that the county treasurer of said Ottawa county (said pretended taxes remaining unpaid and standing

charged against said lands) had sold all of said lands of plaintiffs for said pretended taxes for the year 1873, at tax sale, etc.; "that said taxes were levied on real estate only in said Bennington township, although at the time said taxes were so levied there was a large amount of personal property in said township subject to taxation; and that by reason of the premises said taxes or pretended taxes on the plaintiffs' lands for 1873 and 1874, so levied for the purposes aforesaid, are illegal and void." Plaintiffs demanded judgment, "that said pretended taxes be declared void, and that the same as standing against the plaintiffs' said lands be canceled, and that the defendants be forever enjoined from levying any taxes or pretended taxes against the plaintiffs' said lands for the payment of interest or principal of said bonds," etc. To this petition defendants demurred, "for that the said petition of the said plaintiffs does not state facts sufficient to constitute a cause of action." The case was heard on said demurrer at October Term 1875. The district court overruled the demurrer, and defendants not desiring to answer further, the court gave judgment in favor of the plaintiffs, decreeing said taxes so levied on plaintiffs' lands for said years 1873 and 1874 to be null and void, and that such taxes be canceled and set aside, etc., and that defendants be forever enjoined and restrained from hereafter levying taxes on said lands of plaintiffs for the payment of the interest or principal of the bonds mentioned and described in plaintiffs' petition. The defendants excepted, and now bring the case here on error.

*Thompson & Johnston*, for plaintiffs in error.

*McClure & Humphrey*, for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: In 1872 the township of Concord, Ottawa county, was duly divided, and from the detached territory the new township of Bennington was constituted. At the time of said division the township of Concord was liable on an indebtedness for certain bonds previously issued by the town-

ship to build certain bridges. The question now presented is, whether Bennington township is liable to pay any portion of said indebtedness. Or rather, it is, whether the real estate situated in said township is thus liable. Or, to state the legal question involved in the case with more exactness, it is, whether sections 3 and 4 of "an act to regulate taxation on the change of boundary lines," approved March 3d 1873, (Laws of 1873, page 267,) are constitutional and valid, or not. For if said sections are constitutional and valid, then the real estate in said township of Bennington is liable for a portion of said indebtedness; but if they are not constitutional and valid, then no portion of the property in Bennington township is thus liable. This same question, with some others, has already been decided by this court. *Comm'rs of Sedgwick County v. Bunker*, 16 Kas. 498. In the Sedgwick county case we held that said sections were constitutional and valid, and we still think that such decision is correct. We were not however at that time entirely satisfied with that decision, and we are not now entirely satisfied with the same; but it corresponded then with our best judgment, and it corresponds now with our best judgment. Counsel for defendant in error in this case ask us to reconsider that decision, and they present to us a very able and elaborate argument to convince us that we were wrong. But they have presented nothing new—nothing that we had not already carefully considered and held to be insufficient to invalidate the law. But it is not strange that counsel should wish to have the question reëxamined and reconsidered. The question is a difficult one. The arguments on both sides are nearly equally balanced, and different minds might honestly come to different conclusions thereon. Even unprejudiced minds might reach different conclusions, while every prejudiced mind will undoubtedly reach a conclusion corresponding with its own prejudices, or its own interests. Every person whose interest is against the law, will undoubtedly believe that the law is unconstitutional. But this is not all. The arguments against the constitutionality of the law lie principally upon the sur-

face, and can easily be seen and comprehended, while the arguments in its favor lie further back and can only be seen or comprehended by greater labor and by severer mental effort.  To say that all assessments and all taxes must be equal and uniform, in order to be valid; that the tax in this case is not equal and uniform, and therefore that the tax in this case is void, is an argument so short, so simple, so logical, and so easy of comprehension, that all persons who cannot or will not push their inquiries into a broader field of investigation will gladly accept it as true, and think it conclusive. But this argument is not sound.  The fault is in the major premise of the syllogism.  All assessments and all taxes are not required to be equal and uniform.  It is true, that a certain degree of equality and uniformity must prevail in all assessments, and in all taxes, or they will be void.  But the broad proposition, that all assessments and all taxes must in all respects be equal and uniform, is not true, and in the nature of things it could scarcely in any case be made to be true.  Counsel for defendant in error, all through their argument, seem to have mistaken the language of our constitution.  Our constitution provides that "the legislature shall provide for a uniform and equal *rate* of assessment and taxation." (Const. of Kas., art. 11, § 1.)  It does not provide for a uniform or equal *rule* of assessment or taxation.  And yet counsel all through their argument continually speak of the "uniformity of the *rule* of assessment and taxation," instead of speaking in the language of the constitution of "a uniform and equal *rate* of assessment and taxation."  They use the language of the constitutions of Ohio, and Wisconsin, and California, and several other states, instead of using the language of our own constitution.  Now why should they do this, if they really believe that the language of our own constitution is sufficient for their purpose?  Neither does our constitution in terms require that *all property* except such as it itself exempts, shall be assessed or taxed; nor does it provide in terms that no exemption shall be allowed except such as it allows.  On the contrary, it provides in terms that

"*personal* property to the amount of *at least* two hundred dollars for each family, shall be exempt from taxation," and by this language unavoidably implies that more than two hundred dollars worth of personal property may be exempted by statute.   In this particular, as well as in the said "*rate* of taxation," our constitution differs from those of many of the other states.   These differences will be noted in the opinion soon to be delivered in the case of *Francis, State Treas'r, v. A. T. & S. F. Railroad Co.*   The full provision of our constitution upon these subjects reads as follows:

"The legislature shall provide for a uniform and equal rate of assessment and taxation; but all property used exclusively for state, county, municipal, literary, educational, scientific, religious, benevolent and charitable purposes, and personal property to the amount of at least two hundred dollars for each family, shall be exempted from taxation." (Const., art. 11, § 1.)

Counsel for defendant in error refer us to the *rule* of taxation as enunciated in the case in 9th Wisconsin Rep., page 440. Now on that page is found the brief of counsel for the plaintiff, in the case of *Milwaukee, &c., Rld. Co. v. The County of Waukesha.*   Said counsel in that case was opposed to the law, and of course said it was invalid.   The court however held it to be valid and constitutional.   In the opinion the court say : "The imposition upon railroad property by the act of 1854, does not violate that provision of the constitution of Wisconsin which provides a uniform rule of taxation, provided like property pertaining to railroads, or all property of that class, is alike taxed, or *alike exempt*, as it appears to be." ( 9 Wis. 449.) This case is reported in a note to the case of *Knowlton v. Supervisors of Rock Co.*, 9 Wis. 410.   The court does not, in either of these cases, decide that property other than that exempted by the constitution may not also be exempted from taxation by statute.   In the first case mentioned, the court decides as above stated; and in the other case, the court decides that a part of the property in any given district cannot be taxed "by a different rule from that by which other property [in the same district] is taxed," but

that "all kinds of property must be taxed uniformly, or be absolutely exempt." (Syllabus, page 411; see also in this connection, *Ill. Cent. Rld. Co. v. McLean Co.*, 17 Ill. 291.) ·

Now in the present case, the real estate of said Bennington township is all "taxed uniformly" to pay said indebtedness, and the personal property is all "absolutely exempt" from such taxation. Is not this in accordance with the said Wisconsin decisions? We are also referred to a decision in California. But in California the constitution requires that "*all property* in the state shall be taxed in proportion to its value," and "*taxation* shall be equal and uniform." We are also referred to decisions in Indiana. Now if we understand the following decisions in Indiana, property may be exempted from taxation by statute which is not so exempted by the constitution: *Bank v. City of New Albany*, 11 Ind. 139, 142; *Connersville v. Bank*, 16 Ind. 105; *King v. Madison*, 17 Ind. 48. We do not take issue with any decision in any state referred to by counsel for plaintiffs below; and so far as the present case is concerned we might well admit that each of such decisions would be held to be good law in Kansas, even under our constitution. The case before us is outside of all ordinary cases, and is simply analagous to the said Sedgwick county case reported in 16 Kas. 498.

As we have before stated, it is not necessary that all assessments and all taxes in Kansas should be equal and uniform in order to be valid. (See *Glasgow v. Rowse*, 43 Mo. 480, and *Ill. Cent. R. Co. v. McLean Co.*, 17 Ill. 291, et seq.) And we suppose that no person who has been able to give the subject any careful consideration will so contend. *First:* The aggregate amount and rate of assessment and the aggregate amount and rate of taxation vary in almost every county, city, town, township and school district in this state. The aggregate rate in some places is as high as five per cent. on the valuation of property, and in other places it is as low as one or two per cent. And yet the constitution says that "the legislature shall provide for a uniform and equal rate of assessment and taxation." Now does this mean, "a uni-

form and equal rate of assessment and taxation" *throughout the state*, and for every part and portion of the state? And if not, why not? Can any one give any sufficient reason why not? Of course, every one knows that the constitution does not mean, (although it may seem to say so,) that the "rate of assessment and taxation" shall be so "uniform and equal" throughout the state that if the aggregate rate of taxation in any one school district or township in the state should be just two per cent. on the valuation, that the aggregate rate of assessment and taxation in every other part and portion of the state should also be just two per cent. And yet, who can give an intelligent and logical reason why the constitution does not mean this? There are reasons, and sufficient reasons, but they do not float upon the surface. And hence we would expect that strict constructionists and superficial reasoners would refuse to receive them, and would deny their validity, even when shown to them, unless they assent through fear of ridicule for adopting such an impracticable view of the constitution. Upon this question, see *Bright v. McCullough*, 27 Ind. 223, 229, et seq., and cases there cited. We have shown one exception to the rule that all assessments and all taxes must be equal and uniform; and this one exception alone destroys the universality of the rule contended for by the defendants in error, and to this extent it weakens their argument based upon the universality of such rule. But there are several other exceptions, some of which we will mention.

It seems to be almost universally admitted that said constitutional provision, requiring that assessments and taxes should be at an equal and uniform rate, does not apply to such special assessments or special taxes (usually called "special taxes" in this state,) as are imposed upon abutting lot-owners in cities, towns, or villages, for street improvements. It has always been so held in this state, (*Hines v. Leavenworth City*, 3 Kas. 186, 197, and subsequent cases,) and has generally been so held in other states under similar constitutional provisions. Now these special and local im-

positions are clearly assessments, and clearly taxes; but still it is almost universally admitted that they are not such assessments and such taxes as are contemplated by said constitutional provision. Now why are they not? Can any one tell? We do not propose in this opinion to give any answer.

Neither does said constitutional provision apply strictly to license-taxes. (*Leav. City v. Booth*, 15 Kas. 628, 635; *Fretwell v. City of Troy*, 18 Kas. 271.) In the case of *Leav. City v. Booth*, first referred to, it is said that—

"A proper license-tax is not a tax at all, within the meaning of the constitution, or even in the ordinary signification of the word 'tax.' (*City of East St. Louis v. Wehrung*, 46 Ill. 395; *Addison v. Saulnier*, 19 Cal. 83; *Carter v. Dow*, 16 Wis. 318; *State v. Herod*, 29 Iowa, 123, 125; *Mitchell v. Williams*, 27 Ind. 62.) This is so even where the license-tax is much greater than the mere cost of issuing the license, and even where the surplus fund incidentally arising from the issuing of the license goes into the treasury to swell the general revenue fund. (*Charity Hospital v. Stickney*, 2 La. An. 550; *Tenny v. Lewy*, 16 Wis. 566, 567; *Chilvers v. The People*, 11 Mich. 43; *Ash v. The People*, 11 Mich. 347; *Baker v. City of Cincinnati*, 11 Ohio St. 534, 543, 544; *Johnson v. Philadelphia*, 60 Penn. St. 445, 450; *Henry v. The State*, 26 Ark. 523, 525; *Orton v. Brown*, 35 Miss. 426.) And there are still other decisions, holding that the constitutional provisions with reference to taxation have no reference to the collection of license-taxes, among which are the following: *Anderson v. Kerns Draining Co.*, 14 Ind. 201; *Thomasson v. The State*, 15 Ind. 449, 451; *Bright v. McCullough*, 27 Ind. 223, 232; *The People v. Coleman*, 4 Cal. 46."

Neither do we suppose that capitation taxes, or poll-taxes, or requirements to work on the roads, or to train in the militia, come within said constitutional provision, although evidently they are all taxes in one sense. *Sawyer v. City of Alton*, 4 Ill. (3 Scam.) 127, 130; *Town of Pleasant v. Kast*, 29 Ill. 490, 494.

But even those assessments and those taxes which do come within said constitutional provision are not required to be, and are not always in practice, made and levied by a "uniform *rule*." Railroad property is assessed in one manner,

while other property is assessed in quite a different manner; and still all these assessments are held to be valid. (*Gulf Rld. Co. v. Morris,* 7 Kas. 210, 220, et seq.) Different officers may, and sometimes do, assess different pieces of property belonging to even the same individual. (*Id.* page 227, and Gen. Stat. page 266, § 53, page 1033, § 38, and page 1041, § 65.) Personal property is assessed and taxed by various rules. Some of it is assessed and taxed where the owner resides, without regard to where the property is situated. Some of it is assessed and taxed where the property is situated, without regard to where the owner resides. And some of it, to-wit, bank stock, is assessed and taxed where the business of the bank is done, without regard to where the owner of the stock resides, or where the bulk of the property of the bank is situated, or where the certificates of stock are held. (Laws of 1876, page 57, § 7.) And it has been held in this state that in certain cases the *entire* partnership property of a firm may be taxed in one county, while some of the partners may reside in other counties. (*Swallow v. Thomas,* 15 Kas. 66.) All this we think is generally considered legal under our constitution. Taxes are levied by various officers. State taxes are usually levied by special act of the legislature, and other taxes are usually levied by local officers under general laws. But the same local officers for any taxing district do not always levy all the taxes for such taxing district. Take cities of the second class, for instance; and in such cities some of the taxes are levied by the mayor and council; (Laws of 1873, page 128, § 32;) some of them are levied by the board of education; (Laws of 1876, page 272, § 18;) and still another portion of such taxes may be levied by the county clerk of the county in which such city is situated; (Laws of 1875, page 45, § 6.) The most of the school-district taxes are levied by the school districts themselves, but some of such taxes may be levied by the county commissioners. (Laws of 1876, page 278, § 11.) These are only examples. Other taxes are levied by still other persons. Now with all these examples and illustrations before us, how

can it be said that all assessments and all taxation are governed by a "uniform rule?"

We need not multiply illustrations. The fact is, that the constitution only requires that all ordinary and usual assessments and taxation shall be imposed at "a uniform and equal *rate;*" and all extraordinary and uncommon kinds of assessment and taxation are left to be regulated by law in the same manner as the same would be regulated if said constitutional provision did not exist. Now to tax the property of one township to pay the debt of another township, is an extraordinary and uncommon kind of taxation. It can only happen by the change of the boundary lines of one or more townships. It can perhaps never happen more than once to the same locality. And it can seldom happen even once to any one locality. Constitutions are not generally framed to meet extraordinary and exceptional cases, but only to prescribe general rules for ordinary cases. Our constitution provides that "all county officers shall hold their offices for the term of two years, and until their successors shall be qualified." (Const., art. 9, § 3); and yet this court held that when a new county is organized that the first county officers may be elected for a less term than two years; that the constitution "applies only to the regular term of the office, and not to vacancies, or exceptional cases." (*Hagerty v. Arnold,* 13 Kas. 367.) In the organization of new counties and new townships some things must be done which in the very nature of things cannot come under any of the general rules established for older counties and older townships. And in such cases it is hardly fair to say that the framers of the constitution intended that all of the particular provisions of the constitution for older counties, or older townships, should apply with all their force and rigor to the new counties and new townships, as first organized, and thereby prevent the legislature from doing justice in the particular case. It is more reasonable to suppose that in such cases such provisions were intended to apply to such extraordinary and exceptional cases

only so far as in the nature of things they could reasonably be made to apply.

In the case of *Comm'rs of Sedgwick Co. v. Bunker*, (16 Kas. 504,) the following language is used: "When a debt is created against a county, all the taxable property therein, real and personal, becomes liable to pay the same. The real estate becomes permanently liable, (except for subsequent legislation,) because the owner thereof cannot remove it out of the county; but the personal property does not become so liable, for personal property may be removed out of the county at any time at the pleasure of the owner. If the legislature should change the boundary lines of any county, and in doing so should set off a strip of the territory thereof to some other county, then the legislature might at the same time enact that such strip should continue to be liable for the payment of its share of the debts of the county to which it formerly belonged, or the legislature might entirely relieve such strip from all such liability. And it would seem that the legislature ought to have the power to relieve such strip from a portion of such liability, and to continue its responsibility for the other portion. At least, it would seem that the legislature should have the power to say that the real estate shall continue liable, and the personal property not. It would hardly seem that the detached territory should complain because of such an arrangement, for the taxpayers of the strip would have no more taxes to pay on their real estate in proportion to its value than the taxpayers of the county from which the strip was taken would have to pay on their real estate, and they would have nothing to pay on their personal property. They would have the advantage of the taxpayers of the county in not having any personal-property tax to pay. Not taxing the personal property of the strip, however, makes the tax on all the other property both of the county from which the strip is taken, and the strip itself, higher than it otherwise would be. But as such a thing would not make the tax void as to the taxpayers of the county, could it make it void as to the taxpayers of the

strip?" (16 Kas., pp. 504, 505.) The legislature in such a
case treats the real estate of the strip, for the purpose of
paying the existing bonded indebtedness of the county, as
though the strip still remained a part of the county. But it
treats the personal property as though it were removed from
such county. That is, for the purpose of paying said bonded
indebtedness the real estate of the strip is treated as remain-
ing with the county, and is treated as though it and the
county together still formed one taxing district; and by so
treating the same, the *rate* of assessment and taxation for
such indebtedness is equal and uniform within such taxing
district. But the personal property of the strip is treated as
having been removed from the county, and as having been
placed in another county, and another taxing district; and
by so treating the same, the *rate* of assessment and taxation
in this other taxing district is also equal and uniform. Now
the legislature has the power in other cases, to change the
*situs* of personal property for the purposes of taxation, al-
though no change is made in its actual *situs*. In the case of
*Swallow v. Thomas*, 15 Kas. 68, it was said by this court that
as to "the power of the legislature to separate, for the pur-
poses of taxation, the *situs* of personal property from the
domicile of its owner, there can be no doubt; (*Tappan v.
National Bank*, 19 Wallace, 490;) nor any of the fact that,
unless it has so separated it, it is taxable at his domicile."
(See also, *First National Bank v. Smith*, 65 Ill. 44.) In
the case of *Griffith v. Carter*, 8 Kas. 565, it was held that a
stock of goods kept for sale in Coffey county, and which
perhaps had never been in Douglas county, was nevertheless
taxable in Douglas county where the owner of the property
resided, and was "*exempt* from taxation in Coffey county."
That is, the *situs* of the property for the purposes of taxation
was in Douglas county, although the actual *situs* of the prop-
erty may never have been there, and was exclusively in Coffey
county. That same kind of property would now under the
same circumstances be taxed in Coffey county. The legisla-
ture has changed the law in this respect. (Laws of 1876,

page 57, § 7.) And the legislature in making such change has not only changed the taxable *situs* of such property from Douglas to Coffey county, and the *rule* of taxation in this respect, but it has also to some extent changed the *rate* of taxation; for a little higher rate of taxation must now be imposed in Douglas county, and a little lower rate in Coffey county, to raise the same amount of tax in each of the said counties than would have been necessary to impose if the taxable *situs* of said property had not been changed. And yet, such a change, and such a state of things, are legal, according to the decision made in the case of *Swallow v. Thomas,* supra. That is, according to the decisions made in said cases of *Griffith v. Carter,* and *Swallow v. Thomas,* the legislature may tax or exempt certain property in Douglas county, as it chooses, and may exempt or tax the same property in Coffey county, as it chooses, provided the property is taxed only in one county and exempted only in one county. And according to said cases, the rate of taxation would be equally equal and uniform under said constitutional provision, whether the property was taxed or exempted in either of said counties, provided of course that it was taxed in one and exempted in the other. It is further said in the case of *Comm'rs of Sedgwick County v. Bunker,* supra: "But suppose the personal property of the strip should also be taxed: then must the personal property brought onto the strip after its separation from the county be also taxed? It was not liable for any debt of the county before the separation. Perhaps if the strip had remained attached to the county it never would have been brought onto the strip, and therefore never would have been liable for any tax or debt of the county. Perhaps the detaching of the strip had a controlling influence in bringing such property onto the strip. Then should such property be taxed to pay such debt? The debt may not be due for thirty years after the detaching; and should property brought onto the strip twenty or thirty years after its separation from the county be taxed to pay an old debt of the county? These are probably questions for the legislature,

and not for the courts. But even if any portion of the personal property situated on said strip should not be taxed to pay said debt, then the uniformity of taxation contended for by the defendant would be destroyed."—(16 Kas. 505.) Suppose that within ten or fifteen years from this time two men should emigrate from some other state to Kansas. Neither has ever before been in Kansas, or owned property therein, but each brings with him from his former home a considerable amount of personal property. One settles with his property in said county, the other goes onto said strip. One surrenders himself with all his property to the jurisdiction of said county, receives the benefits of all the property and institutions belonging to the county, and both he and his property become liable to taxation therein. The other never enters within the limits of said county, and never owns or has any property therein. Now is there no stronger reason for taxing the one to help pay the said debt of said county, than for taxing the other? Counsel for defendants in error in this case say not; but it would seem to us otherwise. (See opinion in the case of *Chandler v. Reynolds*, soon to be delivered.)

But we must conclude. We have already extended this opinion to a greater length than was probably necessary; and yet we have not exhausted the subject. To enunciate a few superficial abstract propositions, and then follow them to their logical sequences, is comparatively an easy task. But to enter upon a real investigation of a difficult and complicated subject, and examine it in all its multifarious relations and countless details, requires more time, labor, and research than we have time to give to it. We have extended this opinion, however, thus far in order to show that the general abstract propositions relied upon by the defendants in error do not state correctly either the letter or the spirit of the constitution. They are too general. They cover too much ground. They embrace within their comprehensive terms too many particulars. No provision of the constitution can be found so comprehensive or so sweeping in its

general terms. Hence, although said general propositions of the defendants in error may seem to be generally true in their application to cases, still they cannot always be true, and must in many cases be subject to exceptions and limitations. General propositions of law however are generally subject to exceptions and limitations, and much of the labor of courts is devoted to ascertaining and designating these exceptions and limitations. And here comes the conflict. Technical and superficial reasoners, persons whose prejudices or interests are with the general proposition, and those who cannot or will not investigate a subject in all its manifold details, will refuse to recognize the exceptions or the limitations, and will cling to the general proposition.

We do not wish in this case to fix the boundaries of the operation of said constitutional provision. The task would be too difficult, and we could not do it if we would. Nor do we wish to decide where said provision will apply, or where it will not apply, any further than is necessary for the decision of this particular case. Indeed, all that we wish to decide is, that said constitutional provision does not apply in this case to such an extent as to render said sections 3 and 4 of said act of 1873 unconstitutional and void. No other questions are in fact determined, whatever may be said in the opinion. Whether it is within the power of the legislature to authorize the imposition of a greater rate of taxation upon any part of the property of a detached portion of any county or township to pay indebtedness contracted by such county or township prior to its division, than upon the property of the county or township itself, is not decided in this case. The only effect of this decision is, that it announces the principle that the legislature may when dividing a county or township relieve the personal property of the detached territory from all liability for previous debts of the county or township while continuing the liability of all the other property. Nothing else is decided. The judgment of the court below will be reversed, and cause remanded for further proceedings in accordance with this opinion.

All the Justices concurring.