No. 21,230.

THE STATE OF KANSAS, ex rel. S. M. BREWSTER, as Attorney-general, etc., *Plaintiff*, v. FRED W. KNAPP, as State Auditor, etc., *Defendant*.

SYLLABUS BY THE COURT.

1. LEGISLATIVE POWER—*Limitations.* The doctrine is reiterated that the legislature has no inherent power, but only such as it derives from the people through the constitution.

2. PUBLIC ROADS—*State Aid in Construction—Unconstitutional.* Section 8 of article 11 of the constitution is equally binding on every member of each of the three coequal and coördinate departments of state government and precludes the appropriation of the state's money to aid in the construction of public roads.

3. SAME. House bill No. 4, Laws of 1917, is, by reason of the prohibition expressed in section 8 of article 11, unconstitutional and void.

Original proceeding in mandamus. Opinion filed February 17, 1917. Writ denied.

*S. M. Brewster,* attorney-general, *W. P. Montgomery,* of Topeka, and *John A. Hall,* of Pleasanton, for the plaintiff.

*F. S. Jackson,* of Topeka, for the defendant.

*John L. Hunt,* of Topeka, as *amicus curiæ.*

The opinion of the court was delivered by

WEST, J.: The present legislature passed House bill No. 4, entitled "An act making an appropriation to aid in the improvement of country roads," appropriating $5000 for the purpose of aiding in the improvement of country roads hereafter improved under the Hodges road law (Laws 1909, ch. 201, Gen. Stat. 1915, § 8815 *et seq.*, as amended by Laws 1911, ch. 249, Gen. Stat. 1915, §§ 8820, 8822-8824), at the rate of $100 for each mile or major fraction thereof of such roads, payable after the allowance of a petition for such improvement by the board of county commissioners. The clerk of Shawnee county presented to the state auditor a voucher for $200 for aiding in the construction and improvement of two miles of the West Tenth avenue road. The auditor refused to honor the claim on the ground that the act is void because violative of section 8 of article 11 of the constitution. The state, on the relation of the attorney-general, brings this action to compel the auditor to issue a warrant as demanded by the county clerk. The sole question is the constitutionality of the act under which the claim is made.

In the ordinance of acceptance preceding the preamble to the constitution provisions are made for the erection and maintenance of a state university (§ 2), for the erection of public buildings (§ 3), for the erection and maintenance of charitable and benevolent institutions (§ 4), and for "works of public improvements" (§ 5).

Section 20 of the bill of rights is in these words:

"This enumeration of rights shall not be construed to impair or deny others retained by the people, and all powers not herein delegated remain with the people."

Section 1 of article 7 of the constitution requires the state to foster and support institutions for the benefit of the insane, blind, deaf and dumb, "and such other benevolent institutions as the public good may require." Section 2 enjoins the establishment of a penitentiary. Section 5 of article 11 authorizes the state to contract public debts for "making public improvements."

After all these provisions comes section 8 of article 11, expressly forbidding the state to be a party in carrying on any

works of internal improvement.  It needs no argument to show that public buildings are not internal improvements, for the former are repeatedly and clearly permitted, while the latter are as plainly prohibited.  In the act of admission, approved January 29, 1861 (Gen. Stat. 1915, §§ 288-292), it was provided that ten sections of land to be selected by the governor be granted to the state for the purpose of "completing the public buildings or for the erection of others at the seat of government" (§ 3, subdiv. 3) ; that five per centum of all sales of all public land lying within the state, which should be sold by congress after the admission of the state into the Union, "shall be paid to said state for the purpose of making public roads and internal improvements, or for other purposes, as the legislature shall direct" (subdiv. 5).

In *Leavenworth County v. Miller,* 7 Kan. 479, it was held that while the state could not in its sovereign capacity aid in the construction of roads it could authorize its subordinate political subdivisions so to do.  The first sentence of the second paragraph of the syllabus may with propriety be quoted here: "The legislature have no inherent power, but all their power is derived from the people through the constitution of the state."  Paragraph 3: "The legislature can not exercise any power retained by the people, or not delegated by the people to the legislature."  It was pointed out in paragraph 13 of the syllabus that—

"The ultimate object of the government in granting municipal aid to railroads is to increase the facilities for travel and transportation from one part of the country to the other, which object is, in its nature, a public purpose."

In the opinion, in discussing section 8 of article 11, it was said:

"The people as individuals are the original elements out of which the state is composed, and each individual is as much a part of the state as any corporation, public or private.  And we suppose it will hardly be contended that the people of the state, as individuals, could not engage in any work of internal improvement.  But a distinction may be made between the people as individuals, and as organized into corporations.  The people as individuals do not obtain their power from the state; their power is original and inherent, while the power of corporations is obtained entirely from the state, and is purely derivative and delegated. . . .  The state, as a state, is absolutely prohibited from engaging in any works of internal improvement.  We will con-

cede that this prohibition does not extend to the building of a state-house, penitentiary, state university, and such other public improvements as are used exclusively by and for the state, as a sovereign corporation; but it does extend to every other species of public improvement. It certainly extends to the construction of every species of public improvement which is used, or may be used, by the public generally—by any and every private individual who may choose to use it—such as public roads, bridges, etc." (pp. 492, 493.)

While it may be asserted that these expressions were not essential to the determination of the question before the court, it must be conceded that they voiced the understanding at that time (1871), of the meaning to be ascribed to the words used by the framers of the constitution, when after much discussion, amendment and debate the language of section 8 of article 11 was finally adopted. Mr. Justice Brewer, dissenting from a similar opinion in *The State, ex rel., v. Nemaha County,* 7 Kan. 542, among other things, said:

"The Constitution creates legislatures, courts and executive. It defines their limits, grants their powers. It should always be construed as a grant. . . . But it is said that it is the duty of the government to furnish means of communication from one part of the state to another; that in discharging this duty it is not limited to the old-fashioned dirt road, but may make use of the modern appliances for faciliating such communication, and that if individuals take this duty off its hands, it may properly, out of the public funds, assist these individuals in discharging that duty. It is singular evidence of the existence of this duty, that the people of Kansas, in framing their constitution, forbade the state to discharge it. Article 11, § 8: 'The state shall never be a party in carrying on any works of internal improvement.' " (pp. 554, 570.)

In *The State v. Kelly,* 71 Kan. 811, 81 Pac. 450, holding the oil refinery act to be in violation of the provision in question, it was said:

"This or similar provisions are found in the constitutions of nearly all the states. The history of those states that have engaged in works of internal improvement under constitutions which contain no such inhibition, as well as those whose constitutions contain provisions authorizing the state to engage in such works, is not only interesting but instructive." (p. 830.)

After quoting (p. 831) from *Attorney General v. Pingree,* 120 Mich. 550, the court said:

"As expressed by the attorney-general in his brief, referring to this history of such legislation, 'this evolution of the constitution had already

taken place and was written history at the time our own fundamental law was framed'; and to this we may add that the members of our constitutional convention were perfectly familiar with the history of the section now under consideration when they wrote our constitution." (p. 833.)

In *The State v. Lawrence*, 79 Kan. 234, 100 Pac. 485, in the concurring opinion by Mr. Justice Benson, it was said concerning the provision prohibiting the conferring of corporate power:

"Another constitutional inhibition is: 'The state shall never be a party in carrying on any works of internal improvement.' (Art. 11, § 8.) Concerning this restriction it was said, in *The State v. Kelly*, 71 Kan. 811, 81 Pac. 450, 70 L. R. A. 450, that no circumstances can arise which will justify its violation by any governmental department. The language of the section under consideration here is as clear, strong, and explicit as that quoted above. Both are wise restrictions upon legislative power, to which all in authority should yield prompt obedience." (p. 281.)

We are aware that Maryland has taken a different view. (*Bonsal v. Yellott*, 100 Md. 481.) Turning, however, to volume 4 of Words & Phrases, p. 3718 *et seq.*, we find that the term "internal improvement" has been held to include a wagon bridge across the Platte river, public bridges, a water grist mill, an irrigation system, a petroleum pipe line, water power, roads and highways. In *Cooke v. Iverson*, 108 Minn. 388, certain acts of the Minnesota legislature purporting to appropriate money for the building and repairing of roads and bridges were held unconstitutional for the reason that they violated sections of the Minnesota constitution forbidding the state to be a party to the carrying on of internal improvements, and another section touching the matter of state aid in the construction of public highways and bridges. In regard to the former it was said:

"It is a significant fact that from the adoption of our constitution to the year 1907, with only sporadic exceptions (see Sp. Laws 1868, ch. 140, p. 446), no appropriations were made from the general revenue fund of the state for the construction or repair of roads and bridges, but that all appropriations for such purposes were made from funds accruing from grants of land and other property donated to the state in aid of works of internal improvement within the state; or, in other words, for nearly half a century after the adoption of the constitution the work of constructing and repairing of roads and bridges was left to the counties, towns, and other municipalities of the state, as was the case when the constitution was framed and adopted. This practical construction of § 5,

The State, *ex rel.*, v. Knapp.

art. 9, of the constitution, and the subsequent amendments we have re-
ferred to, are entitled to great weight in considering the validity of the
statutes here in question. It is obvious from a mere reading of § 5 that
if the term 'works of internal improvement,' used therein, includes pub-
lic roads and bridges, the statutes are void, for they make the state a
party in carrying on a work of internal improvement which is forbidden
by the constitution. If one furnishes the money and directs the exe-
cution of an enterprise, he is a party in carrying it on. Now, when our
constitution was framed and adopted, the term 'works of internal im-
provement' was well understood by the people, statesmen, and jurists to
include, whatever else was embraced therein, the construction of public
highways. . . . When the language of the constitution is positive
and free from all ambiguity, courts are not at liberty, by a resort to the
refinements of legal learning, to restrict its obvious meaning to avoid
the hardships of particular cases. We just accept the constitution as
it reads when its language is unambiguous, for it is the mandate of the
sovereign power." (pp. 395, 397.)

This decision was rendered in 1909 and its reasoning and
language are most applicable here.

We know that rivers like the Kansas and the Marais des
Cygnes in times of high water change their channels and cause
great destruction along their valleys by reason of their crooked
courses. It would seem the most patent and plausible scheme
of public welfare for the state to appropriate money to
straighten these channels where their bends and sinuosities
are so marked. After the flood of 1903, which brought such
devastation along the Kansas river, it would have seemed the
most natural thing imaginable for the state to enter upon the
work of protecting this great valley from similar disasters in
the future. But as the last situation was left to be controlled
by the formation of a local drainage board, so the two other
suggested situations must be left out of the category of things
which the state can do, for the all-sufficient reason that in en-
tering upon such task, beneficial as it might be, the state would
become a party in carrying on a work of internal improvement.

Whether this provision was placed in the constitution be-
cause the framers had some regard for the consideration that
it would hardly be fair to tax the people of southern Kansas
for a road across the northern half of the state, or whether
they were actuated more by the general knowledge of the dis-
asters which had come upon various states of the Union by
reason of attempts to carry on works of internal improvement

like canals and systems of highways, we know that such an element of unfairness inheres in the matter, that such historical disaster had become known and read of all men, that after great consideration and deliberation the plain words of section 8 were chosen. We also know that for more than fifty years by continued construction and by common consent the power sought to be exercised by the legislature in the enactment of house bill No. 4 has been denied that body. These are the compelling exigencies which confront us and which are so imperative that it would be of no avail to answer in detail the various points and authorities suggested and cited by counsel in their able and admirable presentation of the other view.

It was said by Mr. Justice Allen in *In re Sims, Petitioner,* 54 Kan. 1, 37 Pac. 135, in discussing the separation of the three departments of government under our constitution, that "the advancement in the science of government made in modern times is due to the separation of the three great coördinate departments." (p. 6.) Every member of each of these three coequal and coördinate departments of government must, as a prerequisite qualification for the discharge of his duties, take an oath that he will support the constitution of the state of Kansas. (Gen. Stat. 1915, § 6749.) In *The State v. Johnson,* 61 Kan. 803, 60 Pac. 1068, Mr. Justice William R. Smith, speaking for the court, quoting from Mr. Justice Allen in the Davis case (*In re Davis,* 58 Kan. 368, 372, 49 Pac. 160), said:

"'The fundamental law embodied in the constitution binds all departments of the government and fixes the limits of their powers. To its mandates all must yield obedience; for it is superior to any and all agencies created under it.'" (p. 814.)

Section 8 of article 11 is the mandate of the people in their sovereign capacity and must be obeyed.

The writ is therefore denied.