No. 22,669.

THE STATE OF KANSAS, ex rel. RICHARD J. HOPKINS, as Attorney-general, etc., *Plaintiff*, v. KENNETH RAUB, as County Clerk of the County of Shawnee, *Defendant*.

### SYLLABUS BY THE COURT.

1. HIGHWAYS—*Improvement of Country Roads—Statutes Constitutional and Valid*. The act providing for the improvement of country roads (Laws 1917, ch. 265) and the amendatory act (Laws 1919, ch. 246), do not violate section 1 of article 11 of the constitution, requiring a uniform and equal rate of assessment and taxation.

2. SAME. Nor do they delegate legislative power to the petitioners for an improved road.

3. SAME. The statutes named are not invalid by reason of the limitations as to the numbers, classes and qualifications of petitioners who may initiate a road improvement.

4. SAME. The fact that an improvement is initiated under the act of 1917, and completed under the amendatory act of 1919, does not invalidate the proceedings.

5. SAME. Nor are the acts invalid by reason of an omission to give townships representation or hearings as to the burden imposed upon them under the acts.

6. SAME—*State Not a Party to Improvement of Roads*. In the making of the improvement, the state, through its officers, exercises only edu-

The State, *ex rel.*, v. Raub.

cational and supervisory powers, and in the exercise of the powers and duties imposed, the state as a state is not a party to the improvement within the meaning of the constitutional provision prohibiting the state from carrying on works of internal improvement.

7. SAME—*Statutes Constitutional.* The statutes named do not violate section 4 of article 11 of the constitution, providing that "no tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied."

8. SAME—*Cost of Bridges—Interpretation of Statutes.* Bridges on an improved road, costing less than $2,000 and having a span of less than twenty feet, are to be included in and their cost apportioned as a part of the improvement, but all bridges of greater cost and longer span are to be built and paid for by the county, as provided in the general law on the subject, and no bridge, whether on or off the improved road, costing more than $25,000 may be built and paid for by the county unless authorized by an affirmative vote of the electors of the county.

9. SAME—*Issuance of Bonds for Road Improvements.* Bonds for such an improvement may ·be issued by the board of county commissioners from time to time as required after the estimates for the work have been made and filed and the cost approximately determined.

10. SAME—*Expenses of Preliminary Work.* The expenses for the preliminary work, including the survey, may be paid out of the special fund provided for making the improvement.

11. SAME—*Statutes—"Due Process of Law."* The acts in question are not open to an objection that they are not due process of law, nor that they infringe the limitations of the federal constitution.

Original proceeding in mandamus. Opinion filed January 10, 1920. Writ allowed.

*Richard J. Hopkins,* attorney-general, and *S. N. Hawkes,* assistant attorney-general, for the plaintiff.

*Hugh Fisher,* county attorney, for the defendant.

*Carr W. Taylor, John H. Connaughton, F. Dumont Smith, Eustace Smith, John F. Rhodes,* all of Hutchinson, and *T. F. Garver,* of Topeka, as *amici curiæ.*

The opinion of the court was delivered by

JOHNSTON, C. J.: This is a mandamus proceeding brought by the state to compel the county clerk to join in the execution of bonds authorized by a vote of the electors of Shawnee county, to pay for the permanent improvement of a highway.

The defendant questions the validity of the act under which the bonds were authorized, and he also alleges that no provision has been made for the payment of the bonds which would accrue in 1920, and further that it is proposed to issue bonds in excess of the expenditure already made towards the improvement. It appears that a petition for what is called the Lawrence & Topeka road, was presented to the board of county commissioners, which designated the benefit district, fixed the terminal points, and specified the type of the improvement and the width of the road, in substantial compliance with chapter 265 of the Laws of 1917. The petition contained the names of more than 35 per cent of the resident landowners owning more than 51 per cent of the lands within the benefit district. Upon this petition the board of county commissioners found and declared that the proposed improvement was of public utility, and following this action surveys were made, plans and specifications prepared, and an estimate of the cost, to wit, $472,970, made, which received the approval of the state highway engineer. Contracts were made for the work in pursuance of a public letting, and the work had proceeded to an expenditure of $161,804.15 when this action was begun. The donations, including federal aid for the work, are $147,150, and the balance of the cost has been apportioned $162,910.09 to the county, $81,455.04 to the townships, and $81,455.04 to the benefit district. There is no contention that the steps taken by the board are not in conformity with the provisions of the statute, but defendant insists that the statutes under which the board is proceeding are unconstitutional in several respects.

The first attack made is that the governing statute contravenes section 1, article 11 of the state constitution, which is that "the legislature shall provide for a uniform and equal rate of assessment and taxation." (Gen. Stat. 1915, § 228.) It is insisted that under the statutory plan there will necessarily be different rates imposed in the county and the townships in order to meet the cost of the improvement. In an amendment to the act of 1917, it is provided that after the application of federal aid and other donations, the remainder of the cost of the improvement shall be apportioned 50 per cent to the county, 25 per cent to the township or

townships in which the benefit district is situated, divided according to the area of the district in each township, and 25 per cent upon the several tracts of land within the benefit district. (Laws 1919, ch. 246, § 5.) Of course there will be different rates of taxation for the improvement in the several municipalities upon which levies are made for the improvement, but that does not constitute an infringement of the constitutional limitation as to uniformity. That limitation only requires that the rate shall be uniform in the district in which the tax ·is levied. Under the act in question the county is the taxing district for the part imposed on the county, and likewise each township is treated as a district for the part of the burden imposed on it. In each separate district the tax will be uniform, and that is all that is required. (*Comm'rs of Ottawa Co. v. Nelson,* 19 Kan. 234; *Elevator Co. v. Stewart,* 50 Kan. 378, 32 Pac. 33; *Freedom Township v. Douglas,* 99 Kan. 176, 160 Pac. 1147.) This limitation, as has been determined, has no application to special assessments levied on lands of owners in the benefit district. (*Hines and others v. The City of Leavenworth and others,* 3 Kan. 186, 197; *Comm'rs of Ottawa Co. v. Nelson,* supra.)

Another objection which plaintiff has discussed under several subheads is that the statute delegates to the petitioners legislative power, in this, that they fix the boundaries of the benefit district, and the type and width of the road. The statute does provide that petitioners may initiate proceedings to obtain a road, but whether or not the request shall be granted and the road petitioned for shall be improved is not for the determination of the petitioners. That discretion and power is lodged in the local legislative tribunal, the board of county commissioners. It is true that when a proceeding is initiated by petitioners and the petition specifies a certain type of road, it shall be of that type if the road is allowed, but whether a road of that type in that region is a practical public utility is to be determined by the board. If the board concludes that the proposed type is not practical, efficient, and useful, and will not adequately subserve the purpose, the petition may be rejected. The board may refuse to build a road in that district until one of the proper type, one deemed

to be of real public utility, is proposed. In the action of the petitioners there is not an approach to the exercise of legislative power, and this has been fully determined in earlier cases arising under similar provisions. In *Railway Co. v. Cambern,* 66 Kan. 365, 71 Pac. 809, an act providing for the building of levees was under consideration, which provided that when a petition signed by landowners was presented to the county commissioners they must proceed to act as viewers, or appoint viewers, and upon the report of the viewers they were to cause the work to be done if they found that the cost would not be too burdensome to the persons in the benefit district. It was held that the discretion and final decision of the benefits and burdens connected with the improvement, as well as the necessity for the same, rested in the county commissioners, and that legislative power was not exercised by the petitioners.

In the rock-road law, under a provision substantially similar to the one we are considering, most of the objections now raised were met and answered. (*Hill v. Johnson County,* 82 Kan. 813, 109 Pac. 163.) There it was insisted that as the petitioners fixed the location of the road, the boundaries of the benefit district, the kind and character of road and the time over which the assessment should be extended, that they in fact exercised powers of legislation. It was decided that the petitioners initiate, but do not legislate; that no step taken by them is effectual unless the board of county commissioners decide that the road petitioned for, and as petitioned for, is of public utility; and that the board has the power to adopt or reject. It was said:

"If in its judgment the taxing district is not a proper one the board can reject the proposition and refuse to find and declare the improvement to be of public utility. The effect of such action would require a petition to be presented with a taxing district acceptable to the board before any improvement could be made or tax levied. The determining of the kind, character and extent of the cost of the improvement, of the time when special assessments are to be paid, and the finding and declaring the work to be of public utility, are all acts of the board. The law does not delegate to the petitioners the power to order or direct that anything be done. They do not arbitrarily fix or form a taxing district, nor do they arbitrarily determine the kind, character or extent of the improvement or the cost thereof, or the time when the special assessments are to be paid. These are all done by the board." (p. 818.)

This ruling was approved and followed in *Stevenson v. Shawnee County*, 98 Kan. 671, 159 Pac. 5.

. Another question much discussed in the present case was presented and determined in *Washburn v. Shawnee County*, 103 Kan. 169, 172 Pac. 997: Is the arbitrary provision fixing the classes and proportions of petitioners who may initiate a proceeding invalid? That is—

"Fifty-one per cent of the resident land owners owning at least thirty-five per cent of the land within the district, or signed by thirty-five per cent of the resident land owners owning fifty-one per cent of the land within the district, or signed by the owners of sixty per cent of the land within the district," etc.   (Laws 1919, ch. 246, § 1.)

It was held that the right to initiate by petition is one the legislature might grant or withhold, and since the legislature might have dispensed altogether with the petition, the fixing of the proportions of the different classes who may petition affords no constitutional ground for an attack on the statute.

Another objection made by the defendant is that the commissioners are carrying on the improvement under a statute other than the one in force when the petition was filed. The first steps in the proceeding were taken under chapter 265 of the Laws of 1917, and are being completed under chapter 246 of the Laws of 1919. But this objection has been met and held to be without merit. (*Washburn v. Shawnee County*, supra. See, also, Laws 1919, ch. 246, § 8.)

There is a contention that the statute is invalid because taxes are imposed upon townships without giving them a voice, representation or a hearing as to the burdens imposed upon them, but this contention has already been overruled, and the reasons for the ruling have been stated. (*Stevenson v. Shawnee County*, supra; *Washburn v. Shawnee County*, supra.)

Nor is there any valid basis for the contention that the statute infringes the constitutional limitation that "the state shall never be a party in carrying on any works of internal improvements." (Art. 11, § 8, Gen. Stat. 1915, § 235.) The construction of highways is of course a work of internal improvement within the meaning of the constitution, and one in which the state as a state may not engage. (*The State, ex rel., v. Knapp*, 99 Kan. 852, 163 Pac. 181.) However, this limitation does not apply to counties, townships, and cities of the state,

and the validity of the acts of these municipalities in building roads, streets and bridges is not and cannot be seriously questioned. It is urged that the fact of the legislature having provided for a state highway commission, which exercises supervisory power over the building of roads, and having appropriated considerable sums of money to pay salaries and the expenses of the department, makes the state a party to the improvement. The commission is authorized to administer the road laws and is given regulatory powers in the construction of roads and bridges throughout the state. The highway commissioners are state functionaries and their authority is state-wide, but the fact that they exercise a regulatory authority over the planning and building of highways, and over the expenditures made by municipalities for these purposes, gives no ground for the claim that the state as a state is engaged in carrying on a work of internal improvement. The public utilities commission is given supervisory power over the building, maintenance and operation of railroads and other public utilities, and the expenses of that commission are paid by the state, but it would hardly be contended that the state was engaged in railroading. The state also has a state oil department, which inspects and to some extent controls the oil business, and considerable money is appropriated to pay for the inspection and supervision of that department, but it never has been suggested that the state is in the oil business. So of other public boards and officers who are given supervisory authority over enterprises and works having a public interest, carried on by others. The fact that state funds are expended for inspection and regulation does not make the state a party to the business or the work carried on. In the building of roads and bridges the state neither buys nor furnishes any material, and does not directly invest any money in the work. The state highway commission is performing a very important work in an educational and regulatory way and in coördinating the efforts of the communities and municipalities of the state to build and maintain trunk and lateral highways throughout the state, but important as the work is, it does not furnish a basis for the complaint that the state itself is engaged in carrying on a work of internal improvement.

There is a further contention that the statute violates section 4 of article 11 of the constitution, providing. that—

"No tax shall be levied except in pursuance of a law, which shall distinctly state the object of the same; to which object only such tax shall be applied." (Gen. Stat. 1915, § 231.)

In the amendatory act of 1919 it is provided that—

"The board may in its discretion pay the county's proportion of the cost out of the general fund and road fund of the county if such funds are sufficient for that purpose after deducting all other proper charges against said funds, and after such payment no general county levy shall be made for payment of the bonds, or if any portion of the county's proportion of the cost is paid in such manner the county levy shall be reduced proportionately thereto," etc.   (Laws 1919, ch. 246, § 6.)

A similar provision is made with respect to the funds of townships.  It will be observed that the part of the section quoted only provides that the surplus remaining of the general and road funds may be applied to this purpose, after all other charges against the funds have been paid.  There can be no question of the legality of a payment out of the road fund, and as only the excess of the general fund, the surplus remaining after all the general current expenses of the county have been provided for and paid, is to be applied, the provision falls within the rule of *The State v. Butler County,* 77 Kan. 527, 94 Pac. 1004, and is not invalid.

Apart from this consideration, the levy in question was made after this provision of the statute of 1919 was enacted. In that act the legislature has expressly provided that the surplus of the general fund thereafter to be levied may be applied to the improvement of roads.  It was competent for the legislature to have declared that the improvement of roads is a current expense to be paid for out of the general fund, and having declared that such use may be made of the fund, it cannot be held that this surplus will be diverted to a purpose other than that for which it was levied.

An attack is made on the statute because of indefiniteness in several particulars.  One is whether a finding that a road petitioned for is a public utility requires the building of a bridge on the proposed improvement costing more than $25,-000 without a vote of the people.  In improving roads under the benefit-district plan, it is provided that all bridges costing

less than $2,000 and having a span of less than twenty feet shall be deemed to be a part of the improvement and be included in the cost to be apportioned to the county, township, and landowners in the district, as the statute prescribes, but all bridges of a greater cost and a longer span are to be built at the expense of the county under the general bridge law. (Laws 1917, ch. 265, § 11.) Bridges the cost or repair of which exceeds the sum of $25,000 are to be built and repaired at the expense of the county under the general law relating to the building of bridges, but before the board of commissioners can contract for the construction or repair of such a bridge, whether it be on or off of the line of an improved road, it must submit the question of the expenditure to the qualified voters of the county, and if a majority of them favor the proposition, the appropriation may be made. (Laws 1917, ch. 80, § 6.) The statute providing for the building of hard-surfaced roads through benefit districts in no way repeals or modifies the requirement that a majority vote of the electors is necessary to the appropriation for a bridge costing more than $25,000.

Questions are raised as to the time of issuance of the bonds for the improved roads. It may be said that only county bonds are to be issued, and county officers are charged with the apportionment of the burden of the bonds, as well as for their payment. There is some contention as to when the bonds may be prepared and issued. It is suggested that they cannot be issued until the improvement is completed. This inference is drawn from the provision in section 5 of chapter 246 of the Laws of 1919 which provides that after the completion of the improvement the apportionment of the burden of making it shall be made, and a hearing of complaints as to the apportionment is provided for. It is the apportionment, however, that is to be made after the completion of the improvement. The provision which specifically deals with the issuance of bonds in section 6 of the act of 1919, and it fixes the time for the issuance of bonds after the estimates for the improvement have been made and the approximate cost determined. This section, it will be observed, is an amendment of section 9 of chapter 265 of the Laws of 1917, which provided for the issuance of bonds after the completion of the improvement, and the change in the statute so as to provide for their issue

after the estimates are made makes clear the legislative pur-
pose that bonds may be issued before the improvement is com-
pleted. Another provision supporting that view is the one
which authorizes the board to issue bonds from time to time
as they may be required upon approved estimates. The pro-
ceeds of the bonds when issued and disposed of are to be de-
posited with the county treasurer in the special fund which is
provided for the improvement. (Laws 1919, ch. 246, § 6.)
The bonds may therefore be issued as the work progresses,
taking care, of course, to limit the payments upon estimates
so as to protect the public and to see that the remainder of
the fund is amply sufficient to complete the improvement. The
preliminary work, including the expense of the survey, is a part
of the improvement, and although questioned, there can be
no doubt that it may be paid out of the special fund provided
for making the improvement.

It is insisted further that the provisions of the law au-
thorize an unreasonable expenditure of money for road im-
provements, and it is said that if all the roads in the county
are improved it will result in the insolvency of the munici-
pality. The extent of the improvement of roads is committed,
in part at least, to the judgment and discretion of the county
commissioners, who are elected by the people. We may assume
that these officers will not be unreasonable in the exercise
of this discretion. We may assume that petitioners will not
recklessly initiate improvements, and further, that electors
will not choose commissioners who will act extravagantly or
unreasonably in authorizing improvements. At any rate, the
question whether there should be additional limitations on the
mileage of roads that may be improved, and the obligations
that may be assumed within a given time, is a question of
policy with which the legislature, and not the courts, must
deal.

We see no ground for the suggestion, and only a sugges-
tion is made, that the statutes authorizing these improvements
are not due process of law, and do not conform with the
limitations of the federal constitution.

The writ of mandamus prayed for by the plaintiff will be
issued.