The Honorable Don Myers State Representative, 82nd District State Capitol Building, Room 175-W Topeka, Kansas 66612-1504
Dear Representative Myers:
As a member of the House Committee on Utilities you request our opinion on whether 1998 House Bill No. 2619, Section 11, which authorizes electrical utilities, their successors and the Kansas Developmental Finance Authority ("KDFA") to issue transition bonds, violates the constitutional prohibition against the State being a "party in carrying on any work of internal improvement." Kan. Const., Art. 11, § 9.
"Retail wheeling" is the common term for a system in which customers can purchase electric power in a competitive marketplace, rather than from state regulated monopolies. The proposed framework for the system in Kansas is House Bill No. 2619. Present utilities, however, have certain costs which the Legislature believes would not be recovered in a competitive marketplace. These are commonly called "stranded costs" and are designated in House Bill No. 2619 as "competitive transition costs." 1998 H.B. 2619, §§ 1(j), 9. Stranded costs may be one of two types, (1) obligations already incurred by the utility such as generation assets, contracts and legal obligations which exceed expected market charges, and (2) costs for nuclear decommissioning, radioactive waste disposal, and certain regulatory assets. 1998 H.B. 2619, § 1(j). The Kansas Corporation Commission ("KCC") is authorized to determine which of these costs may be recovered from the customer through "competitive transition charges." H.B. 2619, §§ 7, 9.
The KCC may also authorize the recovery of stranded costs through issuance of "transition bonds." 1998 H.B. 2619, § 11(a). See, fiscal note on H.B. 2619, dated February 27, 1998, for more detailed explanation of the bill and bond issuance. The proceeds from transition bonds may be applied to fifty percent or less of the utilities' stranded costs. Id. The sole source for repaying transition bonds is the utilities' charge to its customers; that is, under the proposed law, the principal and interest on transition bonds shall be paid by competitive transition charges. 1998 H.B. 2619, §§ 9(b), 11(b). The transition bonds are "special obligations" of the utility, not general obligations of the state, and bondholders have a lien on utility property which they may enforce in the event of default. 1998 H.B. 2619, §§ 9(b) and (g).
Only three entities may issue transition bonds: the utility, its successor and the KDFA. H.B. 2619, §§ 9 and 11. Transition bonds shallnot be "an indebtedness of the state of Kansas or the [KCC], nor shall they constitute an indebtedness within the meaning of any constitutional or statutory provision limiting the incurring of indebtedness." 1998 H.B. 2619, § 11(k). The KCC's final order authorizing the issuance of transition bonds and setting the charges which pay principal and interest on the bonds is irrevocable. H.B. 2619, § 12.
Your question is whether the issuance or repayment of transition bonds violates Article 11, Section 9 of the Kansas Constitution, which states, in pertinent part, "[t]he state shall never be a party in carrying on any work of internal improvement except that . . . (4) it may be a party to any work of internal improvement whenever any work of internal improvement not authorized by (1), (2) or (3) is once authorized by a separate bill passed by the affirmative vote of not less than two-thirds of all members then elected (or appointed) and qualified to each house, but no general property tax shall ever be laid nor general obligation bonds be issued by the state therefore; . . ."
The term "work of internal improvement" was first examined by the Kansas Supreme Court in 1871 in Leavenworth County v. Miller, 7 Kan. 479
(1871), which is still cited as authority in this area. State ex rel.Tomasic v. Kansas City, Kansas Port Authority, 230 Kan. 404, 421 (1981). The 1871 Court characterized works of internal improvement as the "construction of every species of public improvement which is used, or may be used by the public generally . . . such as roads, bridges, etc."Leavenworth County v. Miller, 7 Kan. at 493. A later Court added canals and highways to the list of internal improvements, and explained that the Constitution's framers may have recognized the unfairness, for instance, in taxing people in the southern half of Kansas for a road across the northern half. The State of Kansas ex rel. Brewster v. Knapp, 99 Kan. 852,855, 857 (1917). In these and later cases works of internal improvement are tangible projects and structures constructed for the good of the public. State ex rel. Tomasic v. Kansas City, Kansas Port Authority,230 Kan. at 421. Clearly, utility costs to be recovered with the proceeds of transition bonds do not meet this historical, legal or common-sense definition of a "work of internal improvement."
Additionally, the issuance of transition bonds is not constitutionally prohibited. The transition bonds are to be issued by the utility, its successor or the KDFA. The Court has refused to employ Article 11, Section 9 of the Kansas Constitution when the State authorizes public or private corporations to "construct internal improvements," because the "state itself is not involved in the works of internal improvement."State ex rel. Tomasic v. Kansas City, Kansas Port Authority,230 Kan. at 421. Defendant Port Authority, as a "public body corporate," did not the constitute the State. Id. at 420. Even where a state agency has supervisory power over a project and state funds are expended for inspection and supervision, the State is not a "party to the work" because "the state neither buys nor furnishes any material, and does not directly invest any money in the work." The State ex rel. Hopkins v.Raub, 106 Kan. 196, 202 (1920).
Like the Port Authority, the KDFA is a "public body corporate" and an independent instrumentality of the State (K.S.A. 74-8903); the private utility and its successors are not state instrumentalities. 1998 H.B. 2619. Even if an actual work of internal improvement were to be funded by transition bonds, the entities issuing the transition bonds do not cause the State to become a "party" to the work. Likewise, under the case law cited above, the KCC's regulation and authority over the transition bonds and stranded costs do not trigger the prohibitions of Article 11, Section 9 of the Kansas Constitution.
Moreover, the constitutional provision is not violated because the State of Kansas will not expend any state funds on the transition bonds (again assuming the stranded costs constituted a "work"). All principal and interest will be paid solely by charges to utility customers and, if the utility defaults, bondholders have a lien on utility property. House Bill No. 2619, Section 11 expressly prohibits the transition bonds from becoming an indebtedness of the state. Where KDFA acts as issuer, K.S.A.74-8907(c) requires all KDFA bonds to specifically state that "in no event shall the bonds constitute an indebtedness of the state of Kansas or an indebtedness for which the faith and credit or taxing powers of the state of Kansas are pledged." In short, House Bill No. 2619 ascribes no
financial obligations to the State of Kansas in the issuance or repayment of transition bonds so the State, by law, is not a party to any work.
It is our opinion that the language of House Bill No. 2619 relating to the issuance of transition bonds does not violate the constitutional prohibition against the State "being a party to carrying on works of internal improvement." Kan. Const., Art. 11, § 9. Stranded costs are not works of internal improvement; regulation by KCC does not cause the State to be a party to the "work;" none of the potential bond issuers is a State entity; and the state has no actual or potential financial obligation on the transition bonds.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Nancy L. Ulrich Assistant Attorney General
CJS:JLM:NLU:jm