No. 25,392.

The State of Kansas, ex rel. Charles B. Griffith, Attorney-general, *Plaintiff,* v. Joe Mills, E. Lister and J. H. Springer, as County Commissioners of the County of Franklin, District No. 1, *Defendants.*

SYLLABUS BY THE COURT.

1. Federal-aid Road District—*Legally Created—Road Surveyed—Partially Built—Federal Aid Received—County Bonds Issued to Pay Share of Costs —Ineffectual Attempt by County Commissioners to Dissolve the Road District.* A federal-aid road district was legally created, after which the road throughout the district was surveyed, a part of the road built, federal aid for that portion built applied for and received, the cost of that built as well as the cost of surveying the road and zoning the real estate in the district

was paid in part from the federal aid granted and from the state-aid road fund duly apportioned, and one-half of the balance was apportioned to the county, one-fourth to the townships in the district and the remainder assessed against the real estate within the entire district, after which twenty-four bonds of the district were issued to meet the unpaid debt apportioned to the county, townships and landowners, and levies were made on the property in the district and partly collected to meet a payment due on the bonds and the interest thereon. Afterwards a petition was presented to the board of county commissioners asking a recall of the petition which initiated the creation of the road district, following which a resolution of the board was adopted declaring a recall of the original petition. *Held,* that the action of the board did not operate to dissolve the road district, nor terminate the uncompleted road project.

2. SAME—*Purposes for Which the State-aid Road Fund Cannot Be Used—Bridges—Permanent Improvement of County Roads.* The state-aid road fund cannot be used for the building of bridges nor can it be used for the permanent improvement of county roads unless the amount accumulated in the fund is greater than is necessary to meet and care for any federal road project under construction or for which petitions have been filed and has been declared a public utility.

3. SAME—*Road Drag Fund a County Rather Than State Fund.* The road drag fund is a county rather than a state fund and is not subject to the constitutional limitations in regard to the state engaging in internal improvements.

Original proceedings in quo warranto. Opinion filed February 9, 1924. Judgment for plaintiff.

*Charles B. Griffith,* attorney-general, and *John F. Rhodes,* assistant attorney-general, for the plaintiff; *F. M. Harris* and *W. S. Jenks,* both of Ottawa, of counsel.

*B. F. Bowers,* and *W. B. Pleasant,* both of Ottawa, for the defendants.

The opinion of the court was delivered by

JOHNSTON, C. J.: This is an original proceeding brought in this court by the attorney general challenging the authority of the board of county commissioners of Franklin county to use what is called the state-aid road fund in payment of the cost of constructing bridges unconnected in any way with the construction of a highway, and incidentally questioning the action of the board in dissolving a federal road district which had been organized, a road partly built, bonds issued to pay for the construction and levies made and collected to pay the bonds, and after the attempted dissolution to appropriate the moneys provided for the road project to the building of bridges. The facts about which there is no dispute are in sub-

stance as follows: Shortly before February, 1917, a petition was filed with the county clerk of Franklin county, asking the board of county commissioners to permanently improve the new Santa Fe trail, a laid-out road which extended from the city of Ottawa to a point near the southwest corner of the county, a distance of about twenty-three miles. The petition was in legal form, described the land subject to taxes for the improvement and asked that the costs be paid for in not less than ten nor more than twenty assessments. It asked that the described real estate should be constituted as a road district and the proposed road be declared a public utility. On February 17, 1920, the petition was taken up and a hearing called for March 4, 1920, of which regular notice was given. At that time the hearing was had with the result that a resolution was adopted declaring the sufficiency of the petition, that the road was a public utility and an order made that the district be created and it was designated as "federal-aid road district, Franklin county, number 1." Application was made by the board for federal aid to be used in payment of the improvement. With the petition was a plat showing the real estate included in the district, the course of the road and the township through which it was to be constructed. After the creation of the district the board caused surveys to be made of the entire project and plats and blue prints prepared at considerable expense. On July 16, 1921, the board by resolution ordered the improvements of one and two-thirds miles extending in a southwesterly direction from the city of Ottawa and contracts were let for the construction of this part of the road. Application was made for the due proportion of federal aid which was allowed to the extent of $25,000 and this amount was applied upon payment of the cost of the enterprise. At this time there had accumulated in the state-aid road fund a considerable sum of money derived from payments of licenses on automobiles, trucks and motorcycles, and the board directed the payment of $16,666.66 on the part of the road under construction. It was ascertained that the cost of surveys and plats for the entire road and the construction of the part built other than what was voluntarily contributed by private parties was $98,254.31. Upon this indebtedness $25,000 of federal aid and also $16,666.66 from the state-aid road fund was applied leaving a balance of $56,587.65 unpaid. One-half of this balance was charged to the county, one-fourth of the same, $14,146.91 to the townships through which the road extended, and the remainder, $14,146.91 was

assessed against the real estate in the entire road district as the law provides. To meet the unpaid cost of the road the board issued twenty-year bonds in the amount of $54,000 to be paid in annual installments with interest, payable semi-annually, and to provide funds for the payment of the bonds, the board created zones of real estate in the entire road district and assessments were made on all the lands in the district to cover the preliminary expense in surveying and establishing the road throughout its entire course, and for the construction of the part built at the eastern end of the course. The zone through which the part was actually built contained 210.89 acres owned by about twenty-six persons and the assessment in this zone was about ninety-six cents an acre. The remainder of the assessments were charged against the real estate in zones remote from the part of the road built, covering all of the lands in the same manner as though the road had been completed throughout its entire course. Taxes have been levied on all the real estate in the district for the year 1923, and are being collected to pay installments due on the bonds issued and the interest thereon, and it is proposed to make similar levies to meet accruing installments from year to year during the ensuing nineteen years to complete the payment of the bonds. On July 28, 1923, after the completion of that part of the road which has been mentioned and of the steps already recited, a petition was filed with the board asking a recall of the petition for the creation of the road district and the dissolution of the district. Notice was given of a hearing to be held on August 20, 1923, and at this hearing the commissioners found and declared that the petition contained the names of a majority of the landowners in the road district and ordered that the original petition filed February 1, 1921, and the work on the proposed road should be recalled and held for naught. The accumulations in the state-aid road fund, other than the sum of $16,666.66 already mentioned, was not expended upon any federal-aid project, but the board from time to time had taken from this fund sums aggregating about $5,000 and expended them at various places upon the county roads in Franklin county, and the improvements so paid for were not made in connection with any permanent improvements on county roads, and they have also used this fund for the payment of the entire cost of the improvements so made. There still remains in the fund about $23,000 and the board have let contracts for the construction of the Graham bridge at a cost of approximately $8,000 and

have paid a portion of the contract price of constructing the bridge from this fund and they propose to pay the entire cost of constructing the bridge from the fund. The bridge is not connected with any permanent work on the highway upon which it is located and is a distinct and separate improvement. It is the purpose of the board to use the money from this fund at various places in the county on separate improvements not connected with any larger improvements on county roads, and to pay for the entire cost of such work without regard to the limitations of the statute. A portion of the moneys arising from motor-vehicle licenses have been deposited in a fund which is designated as the road drag fund, and the board has been paying from the fund so created the entire cost of dragging certain county roads in Franklin county, and has not limited expenditures from such fund to an amount not exceeding twenty-five per cent of the cost of the dragging of such roads.

It is contended by the defendants that the federal-aid road district number 1 was legally dissolved and that the state-aid road fund has become available for the improvement of county roads, including the building of bridges. While the primary purpose of the action is to prohibit certain use of the state-aid road fund, the determination of that question is dependent to such an extent upon whether the road district has been dissolved and the project ended, that it seems to be necessary to consider first the order of the board attempting to recall the original petition. The pertinent part of the statute under which that action was taken is that when the state-aid road fund has

"   .   .   .   accumulated or may hereafter accumulate, to such an amount more than sufficient to care for any federal road project under construction or for which petitions have been filed and have been declared a road of public utility: *Provided,* That a majority of the landowners in any benefit district may by petition recall such petition in said county, the board of county commissioners, may from time to time, by resolution apply such portion of said fund, as in their judgment is deemed proper, to the construction, maintenance, and improvement of county roads in such county and thereupon said state-aid road fund shall become county money to be used within the limitations of this act." (R. S. 68-601.)

The petition for the recall had the requisite number of signatures and if the district could be dissolved and the project ended by the action of the board at that stage of the proceedings, it has been done. The petition sought to be recalled initiated the proceeding by which the district was created and the federal-aid road project

planned. When these things were done the ordinary purposes of the petition had been accomplished. The proviso in the act is that a petition may be recalled but it does not purport to authorize the abolition of a municipal district nor terminate a duly constituted federal-aid road project. The legislature we think did not contemplate doing more than to recall or cancel a petition which had not yet fully served its purpose. When the board granted the request of the petitioners and created a road district, planned and organized the project, zoned the territory within the district to fix the rate of assessment, caused a survey of the road to be made, contracted for the building of a section of the road which had been completed, applied for and obtained federal aid which was applied on the work done, issued bonds which covered the entire district, and caused the levy and collection of taxes on the property of the whole district for the payment of the bonds, and accruing interest, the period of recall had passed. The recall of the petition which was only an initiatory process could not at that time affect the existence of the district or destroy the project. If the legislature had intended to provide for the dissolution of the district which had been duly organized and to terminate a road project, a part of which had been completed and for which bonds running twenty years had been issued and sold, and assessments made and collected, surely something more than the provision for the recall of a defunct petition would have been prescribed or required. The only authority given in this respect is to recall the petition, and it must be inferred that a recall may be made when the petition is a live document and is subject to recall. It is not necessary to determine at what stage of the proceedings the petition has served its purpose and has passed beyond recall. For present purposes it is enough to say that when a district has been organized and the project carried out to the extent that was done in this instance, an attempt to recall the petition is abortive. The conclusion must be that the road district is still in existence and the project which was an entirety must be regarded as still under construction to be completed as soon as practicable.

As to the use of the state-aid road fund, the legislature has declared that it is intended for the construction of permanent roads and to meet federal aid that may be granted for the construction and maintenance of such roads, and that when the fund accumulates to an amount in excess of that necessary to care for any federal-aid

project, it may be used for the construction and maintenance of county roads, but this cannot be done until the board shall adopt a resolution declaring that the conditions exist which warrant such use. One of the conditions is that when the fund is more than sufficient to care for any federal-aid road under construction or for which petitions have been filed, it may be used for other roads. (R. S. 68-601.) While this fund is collected under a state law and designated as a state-aid road fund, it cannot be regarded as a state fund as distinguished from a county fund. As has been stated, it is raised to enable counties to build roads. It 'is derived from payments made for licenses of motor vehicles by residents of the county. It is collected and expended by county officers as the statute provides. The name given to it does not make it a state fund nor can the work for which it is expended be regarded as a state improvement within the constitutional limitations as to carrying on internal improvements by the state. (*The State, ex rel., v. Raub,* 106 Kan. 196, 186 Pac. 989.) However, it can only be expended for the purposes named in the statute and within the limitations of the act, and one of the limitations is that it is to be used for the building of roads. (R. S. 68-601.) The different sections of the act make it clear that the fund whether used to meet federal-aid projects or not must be used for the construction and maintenance of roads. The application of it to the building of bridges is contrary to the terms of the act and against the general policy of the state. In providing for the building of bridges the legislature has drawn a distinct line of demarcation between provisions for bridges and those made for the roads on which they are built. Separate funds are provided for the expense of the construction of each and different limitations have been prescribed as to the application of the separate funds. A culvert or bridge built at little cost has been treated as a part of a highway, as for instance in the act providing for the permanent improvement of roads, the legislature has enacted that bridges costing less than $2,000 and having a span of less than twenty feet, shall be included as a part of the improvement, but those costing more than that amount and of greater span shall be built at the expense of the county under the law providing for the construction of bridges. (R. S. 68-713.) In a provision as to raising funds for the building of county roads, there is a specific declaration that funds so raised shall not be used for the construction or repair of bridges and culverts. (R. S. 68-519.) Throughout the

legislation as to bridges there is a manifest purpose that funds shall be raised and kept separate from other funds and many limitations applicable to bridge funds are wholly inapplicable to road funds. (R. S. 68-1101 to 68-1506.) Under the facts and the law the action of the board in using this fund for the building of bridges was unwarranted.

As to the road drag fund the statutory provisions are specific and about them there appears to be no actual controversy between the parties to the action. In answer to one suggestion it may be said that such an improvement cannot be regarded as a state improvement subject to the constitutional limitations in respect to the state engaging in internal improvement. (*The State, ex rel., v. Raub,* supra.)

The judgment is that federal-aid road district, Franklin county, number 1, was not dissolved, by the resolution of recall of the board of county commissioners, and further that the board be ousted from the exercise of usurped authority as to the disposition of the state road fund.