No. 26,761.

THE STATE OF KANSAS, ex rel. CHARLES B. GRIFFITH, Attorney-general, *Plaintiff,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF LINN et al., *Defendants.*

SYLLABUS BY THE COURT.

MANDAMUS—*Board of County Commissioners—Construction of Highway.* On the hearing of a motion, without merit, to quash an alternative writ of mandamus requiring a board of county commissioners to proceed with construction of a federal aid benefit district highway, or to show cause why it should not do so, it is ordered that the peremptory writ issue.

Original proceeding in mandamus. Opinion filed February 18, 1926. Peremptory writ ordered.

*C. B. Griffith,* attorney-general, *C. A. Burnett,* assistant attorney-general, *Charles F. Trinkle,* of La Cygne, and *John A. Hall,* of Pleasanton, for the plaintiff.

*H. D. Reeve, John O. Morse,* both of Mound City, *W. P. Dillard* and *Harry Warren,* both of Fort Scott, for the defendants.

The opinion of the court was delivered by

BURCH, J.: The action is one of mandamus to compel officers of Linn county, having authority to do so, to proceed with the construction of a federal aid benefit district highway.

On October 22, 1925, defendants were served with an alternative writ of mandamus commanding them to surface the highway, build seven designated bridges and otherwise complete the highway, or show cause why they should not do so. Defendants filed a motion to quash the writ. The state moved to advance the cause for hearing. Defendants filed a protest against advancement, stating that, if required to make a return, they desired to raise issues of fact which would require the appointment of a commissioner to take testimony, and the taking of much testimony, and the cause would

---

Highways, 29 C. J. pp. 583 n. 65, 584 n. 73. Mandamus, 38 C. J. pp. 547 n. 86, 751 n. 18.

be regularly reached as soon as the parties were ready to submit the evidence. The hearing of the motion to quash was necessarily delayed until the February, 1926, session of the court. At the hearing defendants requested thirty days' time in which to file an answer, if the motion to quash should be denied. After stating portions of the alternative writ, the brief for defendants contains the following:

"There are many allegations in the writ which, while admitted to be true by the motion of the defendants to quash said writ, to wit:

"The averments that the dirt fills along said road are deteriorating for want of surfacing; that the present bridges are unsuitable for present traffic and require immediate construction of other bridges; that there is available in the treasury of Linn county, from current taxes, an abundance of money with which to construct the bridges demanded; that the board of county commissioners fail, neglect and refuse to proceed with the doing of the things provided by law; that such failure on the part of the board is without lawful excuse; that said board has abandoned the construction of said road; that said board has diverted funds available for said road to the construction of other roads in the county; that said board has abandoned the surfacing of said road and bridges and the building of said bridges for the purpose of constructing another road; and that said board, unless the relief demanded be granted, will abandon the construction of said road;

are subject to denial, as not being in fact true, and will, if the plaintiff has stated a case on paper, be subject to proof and determination."

It may be assumed that other facts stated in the writ are not subject to denial, and from the writ it appears that the highway is a portion of the much-traveled highway from Kansas City, Mo., and Kansas City, Kan., to the Ozark mountain district, to Oklahoma, to Texas, and to the Southwest. The Linn county segment extends from a point on the south line of Miami county, some seven and one-half miles northwest of La Cygne, to La Cygne, and thence east and south, through Trading Post, Pleasanton and Prescott, to the Bourbon county line. A hard-surface road has been constructed from the southern terminus to the Oklahoma state line, and Miami and Johnson counties have under construction hard-surface roads to the two Kansas Citys. The highway was established on April 25, 1921. In the year 1922 contracts were let for grading and culverts, aggregating $247,588.25. This grading and culvert construction was completed with reasonable dispatch the full length of the road. In December, 1922, and January, 1923, contracts for bridge structures were let to the amount of $90,042.24, and these structures have been

erected. Altogether, $350,000 have been expended in constructing the road. Plans and specifications for construction of bridges mentioned in the writ were made, filed and approved in the year 1922; and in consideration of grant of federal aid, the board of county commissioners pledged construction of the road by resolution adopted on September 5, 1922. Early in 1923 bonds were issued and sold in the sum of $206,000, and federal aid has been paid into the county treasury for construction of the road in the sum of $164,500.

It must not be assumed that all the bridge work which has been completed was completed voluntarily. On December 28, 1922, contracts were let for three bridges. In January, 1923, a change in membership of the county board occurred, and on January 8 a resolution was passed declaring the contracts were not binding, declaring the board had no power to make orders leading up to the contracts, and undertaking 'to revoke the orders and contracts. The state brought an action of mandamus in this court to compel performance of the contracts, and defendants presented many reasons why they should not do so. On March 22, 1923, the court declared that none of the reasons was sound. The court assumed defendants would then build the bridges, and a peremptory writ was not issued, but jurisdiction was reserved to make such orders as might be required. (*State, ex rel., v. Linn County,* 113 Kan. 203; 213 Pac. 1062.) The bridges were built, but nothing else has been done which indicates sincere prosecution of the work of constructing this highway. At the hearing on the motion to quash, one of defendants' attorneys stated that proceedings had been initiated to build another bridge. One of the plaintiff's attorneys said the move had been made since the alternative writ was issued.

The first ground of the motion to quash the alternative writ is that the board of county commissioners has never determined the width of the road or selected the kind of surface proposed in the petition for the road. The second ground is that the writ exhibits no plan, specification or estimate for the construction of any type of surfacing adopted or approved by the state highway engineer or any officer of the federal government. The third ground is that the judgment and discretion of the board of county commissioners respecting the type of surface is absolute and uncontrollable by any authority. The fourth ground is that, while plans and specifications for the bridges necessary to completion of the highway have been made and approved, what bridge shall be built and when it shall

be built are matters solely within the discretion of the county board. The fifth ground is that the resolution of September 5, 1922, adopted no width of road or type of surface, determined no necessity for any bridge along the route which the commissioners must build, and agreed to surface the road according to the determination of the state highway commission and the federal bureau of public roads; that the county board had no authority to adopt the resolution; and that the present board is not bound by the resolution. The sixth ground is that the alternative writ requires the performance of indefinite and uncertain acts and acts necessitating the coöperation of third persons.

The petition called for a roadway sixteen or eighteen or twenty feet wide, surfaced with concrete, bituminous macadam, gravel, or brick. It will be recalled the petition was approved and the road was established on April 25, 1921. It is now beyond the middle of February, 1926. The grading has had time to settle; if the grading has not deteriorated through action of the elements during the passing years, it is likely to do so; and conceding that the county board is imbued with unaltered determination not to abandon completion of the highway, the fact that the board has not progressed far enough even to take up for consideration the primary subjects of surface construction, width of way and kind of material, indicates to the court that a writ of mandamus may be helpful by way of stimulating fervor not to abandon completion of the road.

The state highway commission has been given general supervision over construction of this road and its bridges, and specific authority in certain respects, and the federal bureau has certain authority, exercisable as a condition to granting federal aid. To that extent the county board does not have "absolute and uncontrolled judgment and discretion." It is the duty of the board to act, to submit its action for approval, and in the event of disapproval, to act again. The law is a road-building law, not a road-blocking law. It contemplates no deadlocks which will thwart its purpose, but assumes a conception of official duty which will make that purpose prevail.

When the board was here before, resisting the doing of those things which undone would practically defeat realization of the highway contemplated by the approved petition, the court told the board the county was under obligation to build this road and to provide the bridges necessary to its usefulness, the obligation to provide the bridges being implied from the obligation to build the road

State, *ex rel.*, v. Linn County Comm'rs.

consequent upon presentation of proper petition, due finding of public utility, and partial construction. The result is, the bridges named in the alternative writ have been on the list of bridges which the board has determined to build ever since the highway was established. They have also been bridges which it is necessary for the board to construct. It is true the means for constructing bridges to be built at expense of the county must be found in the general bridge law; but these bridges are in the category of bridges to be built just as rapidly as efficient, businesslike prosecution of the road enterprise requires. Since the writ of mandamus is a discretionary writ, it might not issue to compel strict performance of this duty under, for example, prohibitive economic conditions, or under other circumstances which common sense would regard as calling for prudent delay. That, however, would not be because of discretion in the county board not to discharge its duty, or because of discretion to manage discharge of duty in a manner which persistently skirts the border line of evasion. Discretion is allowed to a public officer to fulfill the law, not to obstruct or to defeat fulfillment, and the law requires construction of this highway.

The motion to quash is devoid of merit. The filing of it, the written protest against a speedy hearing, and application for a long time in which to prepare an answer which will indefinitely delay determination of a matter of great interest to the litigants and great importance to the public, are suggestive of a practice which this court does not tolerate. The first and second grounds of the motion to quash are confessions of nonperformance of duty, and the court deems it proper that the county board and its advisers should now turn their attention to candid consideration of a policy of action instead of inaction.

A peremptory writ of mandamus will issue, commanding the defendants to proceed forthwith and diligently to complete construction of the highway described in the alternative writ. For the present the peremptory writ will be in the general terms stated. Jurisdiction of the cause is retained for the purpose of making the writ specifically effective should that be necessary. The costs of the action thus far made are taxed to defendants.

MASON, J., is of the opinion the peremptory writ should not issue.

MARSHALL, J., dissents from issuance of the peremptory writ without permission to answer being granted.

HARVEY, J. (dissenting): I think the motion to quash should be overruled, but that the peremptory writ should not issue. The defendants should be given an opportunity to answer and if the answer should present an issue, testimony should be taken and final judgment reached after a final hearing. It is my judgment we shall then be in better position to determine the rights of the parties and the specific order to be entered than we are at this time.