No. 28,589.

THE STATE OF KANSAS, ex rel. WILLIAM J. SCOTT, County Attorney of Dickinson County, *Plaintiff*, v. THE STATE HIGHWAY COMMISSION et al., *Defendants*.

(273 Pac. 403.)

Opinion filed January 12, 1929.

*William J. Scott,* county attorney, for the plaintiff; *Matt Guilfoyle,* of Abilene, of counsel.

*William A. Smith,* attorney-general, and *Roland Boynton,* assistant attorney-general, for the defendants.

The opinion of the court was delivered by

DAWSON, J.: The state invokes mandamus to compel the state highway commission to proceed in conjunction with the board of county commissioners of Dickinson county to let contracts to complete certain improvements heretofore authorized on a state highway in Dickinson county.

The material facts set out in the application for the writ, and which are conceded to be true by defendant's motion to quash, are these:

Some three years ago the board of county commissioners of Dickinson county, in conjunction with the state highway commission and with the approval of the proper federal authorities, designated one of the principal public roads running south from Abilene to the county line as a state highway. The road has heretofore borne the name of the "Sunshine Trail" and its official designation is now state highway No. 15. The state highway commission adopted a resolution that this highway should be improved with federal aid, and projects to that end were perfected and termed projects No. 370A and No. 370B. In furtherance thereof the Dickinson county commissioners employed civil engineers at a cost of $4,000 to prepare plans and specifications for the proper construction of the road. Under these plans and specifications the road was field checked and approved by the highway commission. In further pursuit of this undertaking and in conformity therewith the Dickinson county board purchased five feet of land on both sides of the road to give it the requisite width of. 60 feet. This cost $2,500. Other land required to conform to the engineering plans cost $500. Hedges were uprooted at a cost of $6,400. These necessary expenditures have already exceeded $17,000; and in addition thereto certain abutting landowners, in reliance upon the official proceedings for the improvement of the road, have permitted their trees to be cut down to widen the road without charge to the county, but such parties will have a just and heavy bill for compensation for their trees if the road improvement .is not prosecuted to a conclusion as officially determined.

Other allegations of plaintiff's application for the writ show that the requisite funds are available to warrant the letting of contracts to complete the authorized improvements of the highway, and that

the Dickinson county board are and for some months past have been ready to let the contract for the completion of the road. But the defendant, the state highway commission, declines to give its assent thereto and declines to coöperate with the county board in any manner toward the prosecution and completion of the improvement to which it has unreservedly committed itself.

On plaintiff's application, based upon the foregoing allegations of fact, an alternative writ of mandamus was issued to the state highway commission. That body makes response by filing a motion to quash the writ on the ground that the facts alleged do not constitute a cause of action. The question of law thus raised has been briefed by the parties, and the cause has been argued and submitted for determination.

The prosecution contends that all the discretionary matters concerning the improvement of this road have already been determined by the coöperative and conjunctive action, sanction, and approval of the county board, the state board, and the federal authority, and that nothing remains but the ministerial or administrative duty of letting the contract for carrying to complete fruition what all these official functionaries have already determined to do.

On the other hand, the state highway commission contends that, notwithstanding its earlier action approving this road improvement and all that it has hitherto done for that purpose, the matter still continues to be one wholly within its discretion, and that it has discretionary power to refrain from carrying to completion this road project to which it has given its sanction and approval.

A majority of this court espouse this view of the powers of the state highway commission. The court notes particularly the absence of any pleading which fairly or impliedly charges the state highway commission with arbitrariness, abuse of discretion or bad faith; and the court therefore feels bound to give to the commission the benefit of the usual rule of law that official duty or official conduct is always presumed to have been rightfully discharged, and that the commission may have had excellent reasons for not going ahead with the road projects concerned herein.

The motion to quash is sustained and the cause is dismissed.

BURCH, J. (concurring): In order that the true significance of the majority opinion may be set out clearly and plainly, I desire to add a few words of concurrence.

The action is one of mandamus to compel the state highway commission to go forward with construction of a highway which, with the approval of the commission, and at considerable expense to the county, has reached a certain stage of completion. The purpose of a writ of mandamus is to compel performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station. (R. S. 60-1701.) In the first volume of the reports of the decisions of this court appears the opinion of the court in a case decided in 1862, the syllabus of which reads:

"Mandamus will not lie to compel a public officer to do an official act, unless the act be ministerial, and not discretionary." (*The State, ex rel. Ross, v. Robinson and others,* 1 Kan. 188, syl.)

This is still the law.

The facts which plaintiff believed created a duty on the part of the commission to build the highway were stated in an alternative writ of mandamus which commanded the commission to perform, or show cause why it had not done so. Defendants filed what is called a motion to quash the alternative writ, on the following ground:

"Come now the defendants above named and move this court to quash the alternative writ of mandamus heretofore in this cause issued, for the reason that said alternative writ and the petition for alternative writ of mandamus heretofore in this cause filed, do not contain sufficient facts to constitute a cause of action against these defendants, and do not contain sufficient facts to warrant the relief prayed for."

The filing of such a motion has been regarded as proper practice in mandamus cases ever since the decision in the case of *The State, ex rel. Ayres, v. Stockwell,* 7 Kan. 98. In that case an alternative writ was set aside, at cost of plaintiff, pursuant to a motion to quash. The syllabus reads:

"A motion to quash an alternative writ of mandamus on the ground that such writ does not state facts sufficient to entitle the relator to the relief sought, is equivalent to a demurrer to a petition in an ordinary action." (Syl. § 1.)

The result of the Stockwell decision is that a defendant in a mandamus case may raise the question whether he ought to be required to answer (make formal return to the writ by showing cause), and unless the writ does state a cause of action for nonperformance of official duty the writ should be quashed. Applying the principle, unless on the face of the writ issued in this case the commission has been guilty of official misconduct, it ought not to be kept in court any longer and the court ought not to be bothered with the case any longer.

Whether the writ states a cause of action is a question of law pure and simple. The members of the commission are public officers acting under their oaths, and are responsible for their official conduct. This court's function is performed when it decides the legal question presented.

The writ states facts which for convenience may be symbolized by the letters A, B and C, and the writ states that the commission, although requested to do so, has failed to authorize or permit completion of the improvement. These facts raise the legal question: Has the work progressed to a point where completion of the project is a mere ministerial duty? The answer to the question is that the subject of completing the work still lies within the field of the commission's discretion.

Since completion of the work does still lie within the field of the commission's discretion, the plaintiff is entitled to an honest exercise of that discretion. The law presumes integrity of official conduct, until a new fact, fact D— log-rolling, or other impropriety, appears. If shuffling, quibbling or evasion is to be charged, the facts must be set down in black and white. This is not a technicality, but a rule of sound public policy, followed not only in this state, but in all states. In this instance the only facts stated in the alternative writ are still just facts A, B and C showing lawful discretion and nothing more.

The brief for plaintiff speaks of changing route from time to time at the whim of individual members of the commission. If that were to be the burden of the complaint against the commission, the place to put the facts was in the alternative writ, and no such facts appear there.

The alternative writ does not pretend to say that the board of county commissioners, desiring to work in harmony with the state highway commission, sought information concerning exercise of the commission's discretion, and were put off with specious or trivial reasons for not completing the work, or were told to mind their own business. So far as this writ discloses, the reasons for the commission's conduct may be known to everybody interested in completion of the highway; and if this case involves blocking highway improvement for "any reason or no reason," the facts were carefully excluded from the sworn petition on which the writ issued.

The motion to quash the writ was signed by the attorney-general and the assistant attorney-general of the state of Kansas. This fact is sufficient guaranty of the sincerity of the motion. The attorneys-

general make no claim in the motion of sacrosanctity of the board. They simply say the alternative writ does not disclose any cause of action against the commission, and because no breach of official duty or other kind of official misconduct is disclosed, the cause ought to be dismissed.

In my judgment it will not help to give the state an adequate system of highways for the court to hold that anybody qualified to sue may hale the highway commission into court on a·pleading which does not show it has done anything wrong, and the court will then turn confessor or inquisitor, and require the commission to tell how it conducts the public business falling within its jurisdiction.

DAWSON, J. (dissenting): Considered technically the application for the writ is defective in that it lacks a specific allegation that the right-about-face of the state highway commission was prompted by log-rolling or other improper considerations. But in view of the considerable burden of expense already incurred by Dickinson county on the faith of the official sanction already given to this road project by the state highway commission, I would overrule the motion to quash and require the commission to answer. If it has a reason that would passably justify its conduct it would be better for the commission itself and mayhap give some satisfaction to the taxpayers whose money has already been spent on this road project if that explanation were set down in black and white. It will not help to give this state an adequate system of highways to have it understood that however prudently and in good faith a board of county commissioners sets about the doing of their part, and incurs public expense in furtherance thereof, the state highway commission may block the project completely for any reason or for no reason, and notwithstanding it has already given its approval of the work the county board has undertaken to accomplish. A state board is no more sacrosanct than a county board, and this court has repeatedly issued its writ to remind the latter of its duty in this matter of diligently pushing to completion road and bridge projects officially authorized and regularly undertaken. In *State, ex rel., v. Johnson County Comm'rs*, 124 Kan. 511, 517, 260 Pac. 985, it was said:

"Nor is it any excuse that the board is now of the opinion that the road so ordered to be constructed is not practicable or that some other road is more desirable. All these questions were finally determined when valid preliminary

proceedings were had and the improvement ordered. Whatever may have been the real reason which led the board to balk on the improvement or refuse to proceed as the law prescribes on the beaten path, those and like excuses afford no justification for its refusal. No steps have ever been taken to vacate the order made, nor has it ever been adjudged to be invalid by any tribunal. As illustrating the lack of merit in the excuses made by the board, it is sufficient to refer to the following authorities: *State, ex rel., v. Linn County,* 113 Kan. 203, 213 Pac. 1062; *State, ex rel., v. Franklin County,* 115 Kan. 531, 223 Pac. 261; *State, ex rel., v. Linn County Comm'rs,* 120 Kan. 356, 243 Pac. 539; *State, ex rel., v. Leavenworth County Comm'rs,* 121 Kan. 148, 245 Pac. 1051; *State, ex rel., v. Franklin County Comm'rs,* 124 Kan. 141, 256 Pac. 716."

I therefore dissent.

Mr. Justice Harvey and Mr. Justice Hopkins join in this dissent.