No. 30,823.

ADA HUTCHIN et al., *Appellants,* v. THE STATE HIGHWAY COMMISSION, THE CITY OF LA CYGNE et al., *Appellees.*

(18 P. 2d 124.)

Opinion filed January 28, 1933.

*Arthur J. Mellott* and *Alton H. Skinner,* both of Kansas City, for the appellants.

*Roland Boynton,* attorney-general, *Wint Smith,* attorney for the state highway commission, and *A. M. Keene,* of Fort Scott, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one by taxpayers to enjoin the city of La Cygne from charging property specially benefited with assessments, and from charging property generally with taxes, to pay for a street improvement. Injunction was denied, and plaintiffs appeal.

The street in question is Market street. It extends from the west side to the east side of the city, and became a connecting link of the highway, construction of which was considered by this court in *State, ex rel., v. Linn County,* 113 Kan. 203 (1923), 213 Pac. 1062, and *State, ex rel., v. Linn County Comm'rs,* 120 Kan. 356 (1926), 243 Pac. 539.

In 1928 the director of the state highway commission and representatives of the city met with the Linn county commissioners, and Linn county pledged assistance in completing the highway. In April, 1930, the highway commission authorized construction of an 18-foot concrete pavement through the city on Market street. This action was taken with the understanding the city would pay one-half of the cost, and the remainder would be paid from federal aid. The action was also taken to fulfill the obligation of Linn county to the city, existing previous to the highway act of 1929. The state highway engineer was instructed to procure a reallotment of federal aid, which had previously been withdrawn.

On May 5, 1930, residents of the city, claiming to be a majority

of the resident owners of property liable to special assessment, petitioned the mayor and council to grade, pave and gutter the portion of the street not occupied by the 18-foot concrete pavement. The mayor and council found the petition to be sufficient, and on May 8 passed an ordinance providing for the improvement. This portion of the pavement was to be of chats. The ordinance was published on May 16. At the meeting held on May 8 a resolution was passed by the mayor and council that the city issue bonds in an amount necessary to pay 50 per cent of the cost of paving the street with the 18-foot concrete pavement.

On July 18 plans and specifications of work were filed with the city clerk by the highway commission, a contract between the city and the highway commission for the entire improvement was authorized, and the highway commission let a contract for construction of the improvement to a construction company. The contractor commenced work on August 1. The contract between the city and the highway commission was signed on August 7, and contained the following provision:

"Whereas, the parties hereto desire to divide the cost of the improvement of said street,

"Now, Therefore, It is agreed by and between the parties hereto

"That said city street be improved in the following manner: Grading, curbing, guttering, drainage, structures, and surfacing with a concrete pavement and chats.

"That the improvement of said street, including the preparation of plans, letting of contracts, and payment of contractor, or for labor and material, shall be under the supervision and control of party of the first part.

"That the cost of such improvement, including construction, engineering, grading, drainage structures, curb and gutter, concrete paving, and chat surfacing, shall be divided as follows: The part to be paid by party of the first part to be computed on the basis of fifty per cent (50%) of the cost of a concrete slab eighteen feet wide, and fifty per cent of the total cost of all excavation, borrow, drainage structures, and guide posts, and remainder of the cost of such improvement to be paid by party of the second part."

On August 21 the taxpayers' action was commenced. Legality of everything which had been done and would be done was assailed in the petition, but no application was made for an order to stop construction of the improvement. The street was graded, curbed and guttered, the 18-foot concrete pavement was laid, and the remainder of the street was paved with chats. On January 23, 1931, the city made final settlement with the highway commission. On February 16, 1931, an ordinance was passed providing for is-

suance of bonds already sold to pay for the city's proportion of the cost of the improvement. The trial of the action commenced on February 27, 1931.

When the lot owners' petition was filed to improve the portions of the street lying each side of the 18-foot concrete pavement, plaintiffs filed a protest. The protest was nugatory, and the mayor and council disregarded it. Protest is allowable only when an improvement proceeding is initiated by the mayor and council, and not when initiated by property owners. Besides that, plaintiffs did not own sufficient real estate to give them standing to protest. On October 20, 1930, plaintiffs moved for a restraining order and temporary injunction to prevent levy of special assessments, and a temporary order was issued. On October 27 a hearing was had, the restraining order was set aside, and a temporary injunction was denied. As indicated, plaintiffs did nothing toward preventing the doing of work which would give rise to necessity for levying taxes and special assessments. The attitude of plaintiffs was stated in the petition as follows:

"Plaintiffs further state that they have no desire to interfere with or prevent the state highway commission from constructing an eighteen-foot concrete slab along Market street, which has been designated as a connecting link in the state highway system.

"Plaintiffs allege that the contract or contracts made by the state highway commission with its codefendants, the J. A. Tobin Construction Company and J. A. Tobin, are divisible, and that said J. A. Tobin Construction Company or J. A. Tobin may, so far as these plaintiffs are concerned, carry on and complete the eighteen-foot slab, and that the state highway commission may and should, as provided by law, pay the cost thereof from the state highway fund provided for the construction of state highways. That said contract or contracts being divisible, this court should enter an order as hereinabove set out, merely restraining and enjoining the city from paying any portion of the costs of said eighteen-foot improvement, or from issuing its bonds for that purpose, or from levying any special assessments against the abutting property therefor, and also for the curbing and guttering of Market street, or paving, chatting, graveling, or otherwise improving the portion thereof between said concrete slab and said contemplated curb and gutter."

The objection to improvement of the portion of the street not occupied by the 18-foot concrete pavement was that the property owners' petition was insufficient to give the mayor and council authority to proceed. At the trial it was shown the petition was in fact defective. It lacked the necessary number of signatures, and the court so found. The mayor and council, however, had found

the petition was sufficient, had acted upon it, and the improvement proceeding was prosecuted to full accomplishment of its purpose. Ordinance No. 425 was passed, levying special assessments against the property on Market street. This ordinance was regular in all respects, and was duly published. Postal cards were mailed to the property owners giving notice of the assessment and giving notice that assessments might be paid in cash within thirty days. Some property owners did pay their assessments in cash. Concede that the whole improvement proceeding was not merely irregular, but was void; following the decision of this court in *Getty v. City of Syracuse,* 129 Kan. 106, 281 Pac. 883, the district court properly held the curative act of 1927 was enacted to meet just such situations. (R. S. 1931 Supp. 15-710.)

The district court held enactment of ordinance No. 425 sufficiently complied with the statute of 1927. Plaintiffs contend the ordinance was an original ordinance levying special assessments, and was not a curative ordinance making a relevy pursuant to the statute. This is true, but all that was necessary was for the mayor and council to repass and republish the identical ordinance, in effect a mere formality. Plaintiffs were in a court of equity, and it was the province of equity to regard that as done which ought to be done.

With respect to the 18-foot concrete pavement, plaintiffs say the city had no authority to contract with the highway commission to pay half the cost and had no authority to carry out the contract. As indicated, plaintiffs did not desire to interfere with construction of the pavement. They just did not want it to be paid for, when finished, under the particular arrangement which the city had made and which the highway commission was actively proceeding to carry out, when the suit was commenced on August 21.

From the beginning the paving of Market street was one comprehensive project. All the plaintiffs, except two, signed the ineffectual protest against action on the petition to curb, gutter and pave "the intervening portion between the pavement to be laid by the state of Kansas" and the curb line. At the session of the mayor and council at which the protest was disregarded and the ordinance was passed providing for construction of the improvement, the resolution was passed to issue bonds to pay 50 per cent of the cost of the paving to be laid by the state. These proceedings were pleaded

in the petition in the taxpayers' suit. Some excuses for not commencing the action sooner were pleaded, but no proof was offered and no finding was made on the subject. The contract between the city and the highway commission, the letting of the construction contract by the highway commission, and the commencement of work by the contractor, were all pleaded in the petition. The court found the contractor commenced work on August 1. How much work had been done before August 21 was not found. In the brief for plaintiffs it is stated that when the suit was commenced only an insignificant part of the work had been done. Between the time the petition was filed and the time the case was tried, the improvement was completed, bonds were issued and sold, and the improvement was paid for. Plaintiffs made no application whatever to restrain performance of the work which, unless halted, would necessarily result in obligation to pay for it, would result in discharge of that obligation by payment, and would confer on the city all the benefits of a pavement laid and paid for. Plaintiffs are private persons seeking to protect private interests. Diligence and method of manifesting diligence must always be proportioned to gravity of consequence if action be not taken.

"The plaintiffs in the taxpayers' suit did not exercise a high degree of diligence, since they let the work proceed when a temporary restraining order to be had for the asking would have brought it summarily to a stop." (*Ritchie v. City of Wichita,* 99 Kan. 663, 669, 163 Pac. 176.)

The result of the foregoing is that whether or not the city had authority to make and fulfill the contract with the highway commission, under elementary principles of equity these taxpayers forfeited right to complain.

The judgment of the district court is affirmed.

THIELE, J., not participating.