No. 26,058.

THE STATE OF KANSAS, ex rel. BRONCE JACKSON, County Attorney of Rice County, *Appellant*, v. A. N. HAYS et al., as the Board of County Commissioners of Rice County, *Appellee*.

SYLLABUS BY THE COURT.

ROADS AND HIGHWAYS—*Illegal Method of Using State-aid Road Fund by County Commissioners—Injunction.* Chapter 175, Laws of 1923, providing for the use of the state-aid road fund, does not authorize the payment from such fund of more than 25 per cent of the cost of construction, or a maximum of $10,000 per mile, on any federal-aid project, nor may a county pay more than 25 per cent, or a maximum of $10,000 per mile, from the state-aid road fund for the construction of a federal-aid project by first transferring it to the general road fund or the general bridge fund of the county, and then using it for such purpose.

Appeal from Rice district court; LEROY E. QUINLON, judge. Opinion filed December 6, 1924. Reversed.

The State, *ex rel.,* v. Rice County.

*Charles B. Griffith,* attorney-general, *Frank C. Baldwin,* assistant attorney-general, and *Bronce Jackson,* county attorney, for the appellant.

*Ben Jones,* of Lyons, for the appellee.

The opinion of the court was delivered by

HOPKINS, J.: This action involves a construction of the statutes relating to the (so-called) state-aid road fund. It is a friendly suit brought on behalf of the state by the county attorney against the county commissioners to restrain them from transferring certain moneys from such fund to the general road fund and the general bridge fund and then expending it in the construction of federal-aid roads. A demurrer to plaintiff's petition was sustained, and plaintiff appeals.

On July 1 Rice county had in its treasury approximately $54,000 which had been collected under the provisions of the automobile tax acts (Laws of 1917, ch. 74; Laws of 1919, ch. 74; Laws of 1921, ch. 217; and Laws of 1923, ch. 175). It had no federal-aid road project under construction nor petitions on file for such a project which had been declared a public utility under the benefit-district road-improvement act. The county commissioners desired to construct some hard surfaced roads, and conceived the plan of paying the cost of construction of such roads with such federal aid as they were able to procure and with the $54,000, or such part thereof as might be necessary. They were confronted with the restriction in section 68-608 of the Revised Statutes, limiting the amount that may be expended from the state-aid road fund, where federal aid is used, to 25 per cent. of the cost of the improvement, and not exceeding $10,000 per mile. In order to avoid this restriction they sought to transfer a portion of the $54,000 to the general road fund and a portion to the general bridge fund, with the intention of then using it from those funds to supplement the twenty-five per cent. allowed by section 68-608. This may not be done.

It is apparent that while the legislature intended to take the control of and distribution of this fund from the highway commission and to place it with the county commissioners, it was not without certain restrictions.

Chapter 175 of the Laws of 1923 (R. S. 68-601, *et seq.*) should be read in connection with and in the light of the enactment which it repealed (Laws of 1921, ch. 217). The act of 1921 placed the control of the state-aid road fund in the state highway commission. Section 4 of the act provided that a county might avail itself of the

use of money from the state-aid road fund by the passage of a resolution designating the road sought to be improved by terminal points, etc. This section provided that the commissioners should then notify the state highway commission of such resolution and should advise the state highway commission that they had provided funds to meet the application of state aid upon the improvement, if such application was approved by the state highway commission. The various methods by which the commissioners should raise the funds to meet state aid were specified in section 4. The state highway commission might or might not consent to the application of state aid on such road. Unless they consented the fund was not available. Section 7 required the state highway commission's approval to all warrants drawn by the commissioners upon the state-aid fund. The commissioners were limited as to the roads upon which this fund might be applied. Section 4 provided that it could be applied only upon legally established county roads or benefit-district roads, and that no state aid was available for the roads of any county if the population exceeded 7,500 unless the property benefited by such road was assessed 25 per cent of the cost of such improvement. Section 9 provided that upon no road should state aid be applied for more than 25 per cent of the cost thereof, or a maximum of $10,000 per mile.

Under the act of 1923 (R. S. 68-601, *et seq.*) the control and distribution of the fund was taken from the state highway commission and placed in the boards of county commissioners. Certain limitations were placed upon the use of this fund; among others, that the fund must be used upon roads, not bridges, unless the cost of constructing the bridge is less than $2,000 and is a part of the highway.

In *The State, ex rel., v. Franklin County*, 115 Kan. 531, it was said:

"The application of it (state-aid road fund) to the building of bridges is contrary to the terms of the act and against the general policy of the state. In providing for the building of bridges, the legislature has drawn a distinct line of demarcation between provisions for bridges and those made for the roads on which they are built. Separate funds are provided for the expense of the construction of each, and different limitations have been prescribed as to the application of the separate funds." (p. 537.)

That the fund should be used for the permanent construction, improvement or maintenance of such roads; that if used for reimbursement of roads constructed since March 1, 1919, the amount

so used for such reimbursement not to exceed 25 per cent of the cost or a maximum of $10,000 per mile. (R. S. 68-607.) If used to meet federal aid the amount of the fund to be used may not exceed 25 per cent of the cost, or a maximum of $10,000 per mile. (R. S. 68-608.) Section 1, chapter 175, Laws of 1923 (R. S. 68-601), in part, reads:

"The purpose and intent of this act is to enable counties in this state to provide for roads and highways that are eligible to portions of the state-aid road fund raised by this act and the fund called the state-aid road fund created by chapter 217 of the Laws of 1921 and to meet federal aid and for the cost of permanent roads and highways, and also to enable the several counties of the state to establish, construct and maintain other permanent roads and highways and to raise and apply a state-aid fund created by this act, and to apply unexpended portions of the state-aid road fund raised by chapter 217 of the Laws of 1921, for all of said purposes, in the discretion and judgment of the boards of county commissioners of the several counties, and to provide for the creating, accumulating and distribution of the fund. . . . When such funds raised in any county has accumulated, or may hereafter accumulate, to such an amount more than sufficient to care for any federal-road project under construction or for which petitions have been filed and have been declared a road of public utility . . . the board of county commissioners, may from time to time, by resolution, apply such portion of said funds, as in their judgment is deemed proper, to the construction, maintenance and improvement of county roads in such county, and thereupon said state-aid road fund shall become county money to be used within the limitations of this act: *Provided,* That the county commissioners in any county to which this act may apply shall before using any of said fund herein provided for, adopt a resolution declaring that the conditions described in the foregoing part of this section exist in their county. . . ." (R. S. (68-601.)

R. S. 68-608, in part, reads:

"In counties desiring to use the state-aid road fund to meet federal aid, and such desire is manifested by resolution duly passed by the board of county commissioners of any county, so stating, any such county shall, under the direction of the state highway commission, use such portion of the state-aid road fund described in section 1 of this act that is necessary to meet any federal-aid project, not to exceed twenty-five per cent (25%) of the cost, or a maximum of ten thousand dollars ($10,000) per mile. The remainder of the cost of the improvement may be . . . financed by a benefit-district petition."

A consideration of the various provisions of the 1923 act leads to the inevitable conclusion that where federal aid is had for the construction of a road, not more than 25 per cent, or $10,000 per mile of the state-aid road fund may be used. To permit the county commissioners to transfer a portion of the state-aid road fund to the general road fund and a portion to the general bridge fund, and

then use the amount on a federal-aid project, would be to accomplish indirectly what cannot be done directly. There is no authority for such action. The intention of the legislature cannot be circumvented in that way.

It has been suggested that the provisions of section 1 of the act (R. S. 68-601) are broad enough to permit the county to construct and to pay the entire cost of the construction of a hard-surfaced road from the state-aid road fund. While the question is not presented in this case, and while we do not pass expressly on it, we think there is grave doubt whether the legislature intended to permit the construction of hard-surfaced roads in this manner. The general policy of the state has been to construct hard-surfaced roads under the benefit-district plan.

It was suggested on the argument that plaintiff's petition did not state a cause of action because it failed to allege that any steps or official action had been taken by the defendant board of county commissioners that indicated their determination to transfer the state-aid road fund into the county road and bridge funds to be used in constructing a federal-aid project. It was admitted, however, that the commissioners did intend to so act, and for the purposes of this case the petition may be considered as having been amended.

It may also be observed, in passing, that the transfer of the state-aid road fund, as provided in section 1 of the act (R. S. 68-601) should be predicated upon a resolution by the county commissioners reciting, substantially, *first*, that there is more than sufficient money in said state-aid road fund to care for federal-aid projects under construction in the county, or for which petitions have been filed and have been declared a road of public utility—the recital in the resolution that no such projects were under construction, and that no petitions had been presented to the board of county commissioners and declared a road of public utility, will satisfy this condition; *second*, that there is a necessity in said county for the use of said fund in the construction or maintenance of the designated county roads; *third*, that such use of said fund will be for the best interests of said county and will result in the permanent improvements of the roads designated to be improved.

The judgment is reversed and the cause remanded with directions to overrule the demurrer.